622 P.2d 9

**STATE of Arizona, Appellee,**

**v.**

**Loris Lee McVAY, Appellant.**

**No. 4604.**

Supreme Court of Arizona,
In Banc.

Dec. 4, 1980.

Rehearing Denied Jan. 20, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Dennis C. Freeman, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by David Brauer, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Loris Lee McVay, appeals from a jury verdict and judgment of guilt to the crime of first degree murder in violation of A.R.S. §§ 13–451, –452, –453(A), and sentence of death pursuant to A.R.S. § 13–454.[1] We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035, as revised effective 1 October 1978.

Although defendant raises some twelve questions on appeal, since we must reverse on one question, we need not consider the other matters as they are not likely, even if error, to be repeated on retrial. We answer only one question: Did the trial court commit reversible error in the admission of hearsay evidence?

The facts necessary for a determination of this matter on appeal are as follows. In late October 1977, defendant Loris Lee McVay was introduced by Connie Pitts to her estranged husband, Thomas (Pappy) Pitts, the victim in this case. For a short time, defendant shared with Thomas Pitts the quarters provided for him by his employer, Valley Transportation and Warehouse Company. Thomas Pitts owned a custom built motorcycle which he kept at the premises.

About 26 November 1977, the defendant met Diana Farris at the Blue Light Tavern in Phoenix, Arizona, and stayed with her for a few days. On 2 December 1977, Farris noticed the defendant in the tavern wearing a leather jacket which appeared to be too small for him and which she had not seen him wear before. She also noticed a bulge in his pants pocket which resembled the shape of a small hand gun or derringer. When she returned home that night, she noticed that a .22 caliber derringer she kept in her bedroom was missing.

On 5 December 1977, Thomas Pitts was found dead in his home. He had been shot twice in the head with a small caliber gun. His leather jacket and motorcycle were missing. It appeared that the decedent was undressing at the time of the murder. He was last seen alive on 2 December 1977.

On 6 December 1977, the defendant called Diana Farris and told her: "I am sorry to have to leave but * * * things came down funky. I had to kill a man and take his motorcycle * * *." The motorcycle was later found at a service station in Sells, Arizona. After his arrest for the murder of Pitts, the defendant was held in the Maricopa County Jail with inmates Kenny Knorr, Porter Smithson and others.

At trial, defendant testified in his own behalf that Mrs. Farris had given him her derringer. He denied killing Pitts, contending that Pitts was already dead when he arrived at the victim's home. Defendant admitted that he took the victim's leather jacket and motorcycle, and that he drove the victim's motorcycle to Sells.

Kenny Knorr testified for the State on direct examination to admissions made by the defendant while they were both inmates in the Maricopa County Jail. Specifically, Knorr testified the defendant admitted waiting in the apartment and surprising and killing "Pappy" Pitts.

The defendant called Porter Smithson who testified that the defendant made no statements admitting the crime, and that Knorr obtained what facts he related to Detective Klettlinger from defendant's po-

---

1. Title 13 citations are to the Arizona Criminal Code as it existed prior to its extensive revision effective 1 October 1978.

lice and arrest reports that Knorr helped to get for the defendant. Smithson further testified that Knorr was trying to make up a statement that would "look good to the DA," and that Detective Klettlinger had told Knorr if he could get a good statement, Knorr would be "cut loose." The State, on rebuttal, called Detective George Klettlinger who testified that Knorr had told him much more about the defendant than that contained in the police and arrest reports:

"Q Now, did any of this information go to things that happened after the shooting?

"A It did.

"Q What did it concern?

"A Well, it concerned McVay's activities after he left Phoenix, after he shot Pappy Pitts, and concerned his activities in Tucson and his activities in California.

"Q Now, you were the chief investigating officer on this matter, are you not?

"A Yes, ma'am.

"Q Now at the time that you were talking to Kenny Knorr, was there anything in the police reports that give any information as to Loris Lee McVay's activities in Tucson or in California?

"*   *   *   *   *   *

"A Other than the fact that we have recovered the Pitts motorcycle in Sells, Arizona, at that point I had no information of McVay's activities in or near Tucson.

"Q So was the information that Kenny Knorr was giving you the first time you had heard this?

"A That's correct.

"Q What if anything did you do to determine if the information given to you by Ken Knorr was truthful?

"A I contacted both the Pima County Sheriff's Office and the Tucson Police Department.

"Q Did you contact any authorities in California?

"A I did.

"Q Now, did you confront these various authorities with the information given to you by Ken Knorr?

"A I did.

"Q And were you able to confirm the truthfulness of what Ken Knorr had told you?

"MR. ROOD: Your Honor, I would object. It's hearsay."

The trial court admitted the testimony for the limited purpose of testing the truth and veracity of the witness, stating:

"THE COURT: *   *   * I see no reason to discuss the substance of it anyway, so for that limited purpose it may be answered.

"MS. LANCY: Your Honor, without— the admonition is well taken, Your Honor.

"BY MS. LANCY:

"Q Detective, without going into the substance of what you told the other authorities and what they told you, were you able to determine or confirm whether the information given to you by Ken Knorr was truthful?

"A I was.

"Q Was there any information that he gave you that turned out to be untruthful?

"A None that I could find."

Hearsay is defined in our rules as:

"*   *   * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Arizona Rules of Evidence, 17A A.R.S.

■ Hearsay is generally inadmissible under Rule 802 because the defendant has no opportunity to cross-examine the person making the statement. *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

■ The purpose of Detective Klettlinger's testimony was to (1) impeach Smithson's testimony to show that the defendant did, in fact, make statements to Knorr containing information in addition to the facts

contained in the police reports, and (2) to rehabilitate Knorr as a witness who had testified as to the defendant's admissions of guilt. The testimony of Detective Klettlinger, in effect, was a statement as to what the authorities in Pima County and California told him about defendant's conduct after the murder. The authorities from Pima County and California were not available for cross-examination. What they actually said to Detective Klettlinger would be hearsay and would be inadmissible as such. The effect of Detective Klettlinger's testimony was to bring these same hearsay statements into evidence in the form of Detective Klettlinger's opinion. As such, Detective Klettlinger's opinion was subject to the hearsay objection and was erroneously admitted.

Neither can we find this was harmless error. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We have stated:

"* * * This Court has held many times that in order to justify a reversal an error must be prejudicial under the facts of the case. The test is whether there was reasonable probability under such facts that a verdict might have been different had the error not been committed. (citations omitted) * * *" *State v. Brady*, 105 Ariz. 190, 196, 461 P.2d 488, 494 (1969).

Whether denominated harmless error, as when dealing with constitutional error, *Chapman*, supra, or prejudicial error, A.R.S. § 13–3987, as when dealing with non-constitutional error, the test is the same. If it can be said that the error, beyond a reasonable doubt, had no influence on the verdict of the jury, then we will not reverse. *Brady*, supra. The question is not whether, absent the error, there were sufficient facts from which the jury could find the defendant guilty, the question is whether, without this evidence, the appellate court can say, beyond a reasonable doubt, that the jury would have found the defendant guilty. In this case, we cannot say beyond a reasonable doubt that, absent this evidence which rehabilitated the witness Knorr, the jury would still have brought in the same verdict. Not only did Knorr testify that defendant specifically admitted killing "Pappy" Pitts, but the only evidence of the element of lying in wait, which raised the murder from second degree to first degree, came from Knorr's testimony. Had Knorr been discredited, the jury might have reached a different verdict both as to innocence or guilt and as to the degree of the offense. Rehabilitating with the hearsay evidence may well have been the factor which removed a reasonable doubt in the minds of the jurors. It was not harmless error beyond a reasonable doubt. *Harrington*, supra; *Chapman*, supra.

Reversed and remanded for new trial.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.