776 P.2d 1067

**STATE of Arizona, Appellee,**

v.

**William E. LUNDSTROM, Appellant.**

**No. CR–88–0076–PR.**

Supreme Court of Arizona.

July 18, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Vicki Gotkin Adler, Asst. Attys. Gen., Phoenix, for appellee.

Thomas A. Thinnes, P.A. by Thomas A. Thinnes and Martin Lieberman, Phoenix, for appellant.

FELDMAN, Vice Chief Justice.

After trial for the first degree murder of his wife, on January 23, 1986 a jury found William E. Lundstrom guilty of manslaughter. *See* A.R.S. § 13–1103. The trial court sentenced Lundstrom to the enhanced presumptive term of 7.5 years. *See* A.R.S. §§ 13–604(G), –701, –702. Lundstrom appealed, and the court of appeals affirmed. *State v. Lundstrom,* 157 Ariz. 485, 759 P.2d 631 (Ct.App.1988). We have jurisdiction and granted Lundstrom's petition for review. Ariz. Const. art. 6, § 5(3); Rule 31.19, Ariz.R.Crim.P., 17 A.R.S.

## FACTUAL SUMMARY

Lundstrom, a Wickenburg resident who suffers from severe facial and other disfigurement caused by birth defects, met his wife, Tonya, when he was twenty-three and she fifteen. They married soon after they met. However, their marriage was not without troubles. Trial testimony indicated that during the marriage Tonya had several affairs with other men and became pregnant during one of those affairs. Tonya aborted the pregnancy and the marriage continued. At the time of the homicide they had been married for twelve years and had three children.

During the summer of 1984, Tonya started another extramarital affair and became pregnant as a result. Lundstrom learned of this affair and the resulting pregnancy a few days before the shooting. He also learned Tonya intended to bear the child and leave him permanently.

On the morning of January 25, 1985, the day of the crime, Lundstrom drove from Wickenburg to Phoenix to buy birthday gifts for his son. While in Phoenix he also purchased a .38 caliber handgun. Lundstrom testified that he intended to buy a shotgun with which to kill himself, but when he falsely explained to the shopkeeper that he wanted "something for [his] wife to protect herself," the shopkeeper suggested the handgun instead. Reporter's Transcript (RT), Jan. 15, 1986, at 89. On the return trip to Wickenburg, Lundstrom pulled off to the side of the road to relieve himself and then decided to test fire the gun "to see what it felt like." RT, Jan. 16, 1986, at 19.

After arriving in Wickenburg, Lundstrom went to the restaurant where Tonya worked. He attempted to speak with her, but she was too busy. He left, went to work, and later returned to the restaurant with the handgun concealed in the small of his back. Tonya was able to meet with him and they went into a back room. After a brief discussion, Lundstrom fired the gun five times, fatally wounding Tonya. He then waited outside the restaurant for the police to arrive. On their arrival, and not knowing whether Tonya was dead, Lundstrom admitted shooting his wife. Later, during a custodial interrogation, Lundstrom essentially admitted the premeditated murder of his wife.

Lundstrom's principal defense at trial was that at the time of the shooting he was suffering from a "brief reactive psychosis," a form of insanity. *See* A.R.S. § 13–502. Lundstrom offered this defense through the testimony of psychologist Michael Bayless, Ph.D. The state countered this expert testimony with its own expert, who testified that Lundstrom was not legally insane at the time of the shooting. However, on cross-examination, the state's expert admitted that his initial inclination was to diagnose Lundstrom as suffering from a brief reactive psychosis. RT, Jan. 21, 1986, at 85, 97–98.

The jury acquitted Lundstrom of first and second degree murder, but convicted

him of manslaughter, a lesser included offense. Lundstrom appealed.

## THE COURT OF APPEALS DECISION

The court of appeals held that the trial court correctly admitted Lundstrom's incriminating statements into evidence. *Lundstrom,* 157 Ariz. at 488, 759 P.2d at 634. Lundstrom does not seek relief on this issue, but raises three other arguments. First, he argues, the appellate court erred by finding harmless error after it assumed, *arguendo,* the trial court had erred by precluding Bayless from informing the jury about another non-testifying expert's opinion. *Id.* at 491, 759 P.2d at 637. Lundstrom maintains that the non-testifying expert's opinion was part of the "facts or data" underlying Bayless's in-court opinion and should have been admitted as such. *See* Rules 703 and 705, Ariz. R.Evid. 17A A.R.S.[1] Second, Lundstrom contends the court of appeals erred by finding harmless any error the trial court committed by precluding defense counsel from referring to the non-testifying expert's opinion during closing argument. *See Lundstrom,* 157 Ariz. at 491, 759 P.2d at 637. Third, Lundstrom asserts the court of appeals erred in determining that any error in the instruction on Lundstrom's burden of proof on insanity also was harmless. *Id.* at 493, 759 P.2d at 639; *see State v. King,* 158 Ariz. 419, 763 P.2d 239 (1988) (finding fundamental error in definition of defendant's burden of proof of insanity).

We granted review on all three issues and ordered briefing on the issue of whether Rules 703 and 705 contemplate a testifying expert disclosing to the jury, as a "fact or dat[um]," a non-testifying expert's concurring opinion. We also ordered additional briefing on the retroactive application of our decision in *King.* Because we cannot find the errors concerning Bayless's testimony harmless beyond a reasonable doubt, we reverse and remand for a new trial and do not address any alleged error in the jury instructions defining Lundstrom's burden of proof of insanity nor the retroactive application of *King.*[2]

## DISCUSSION

### A. Trial References to Dr. Garcia's Opinion

Bayless testified that at the time of the shooting, Lundstrom suffered from a "brief reactive psychosis," a form of temporary insanity. Essentially, Bayless testified Lundstrom was *M'Naghten* insane during the commission of the offense.

On direct, Bayless stated that his practice is to consult with physicians and other psychologists when evaluating patients like Lundstrom, and that he did so in this case. RT, Jan. 16, 1986, at 83–84. In particular, Bayless testified he discussed, "quite by accident," Lundstrom's case with Leonardo Garcia–Bunuel, M.D. Garcia is the chief psychiatrist for the Correctional Health Services at the Maricopa County Jail, where Lundstrom was incarcerated after his arrest. Garcia saw Lundstrom at the jail the day after the killing, examined and evaluated him, and assigned him to a psychiatric ward. Neither party called Garcia to the stand.

When Bayless related the fact of his conversation with Garcia, the prosecutor objected on the ground that defense counsel had not listed Garcia as a witness and was trying to "back-door" Garcia's opinion into the proceedings. The court withheld a ruling on the objection, noting the objection was premature.

Bayless continued his testimony, stating he solely relied on the grand jury transcript, medical examiner's report, police report, and his own expertise in preparing his written report. Bayless concluded that Lundstrom was insane at the time of the offense. When asked if his examination of the police reports indicated Lundstrom's comportment after arrest demonstrated that he had suffered a "loss of contact with

---

1. The Arizona Rules of Evidence are hereafter cited as "Rule ____."

2. In *State v. Gardfrey,* 161 Ariz. 31, 32–33, 775 P.2d 1095, 1096–1097 (1989), we held that *King* applied retroactively to all cases not final as of September 22, 1988.

reality," Bayless responded affirmatively and added that Garcia "substantiated" his opinion on this point. The court then sustained the prosecutor's objection and recessed the trial.

At a subsequent in-chambers conference, defense counsel acknowledged Bayless's earlier testimony that he did not rely on other experts in preparation of his final report. Counsel stated, however, that Bayless did rely on Garcia's opinion for his in-court testimony and Bayless should be permitted not only to testify as to that reliance, but also as to the content of Garcia's opinion. Counsel avowed that Garcia's opinion was the same as Bayless's— Lundstrom suffered a reactive psychosis triggered by having learned of his wife's continuing infidelity, resulting pregnancy, and threat to leave him;[3] thus Lundstrom lost touch with reality and was *M'Naghten* insane at the time of the killing. The court ruled Bayless could testify that he relied on Garcia's opinion for his own in-court opinion testimony, but could not testify what Garcia's opinion was or that it was consistent with or the same as his own.

After court reconvened, defense counsel concluded Bayless's direct examination in accordance with the court's ruling. On cross-examination, however, Bayless testified that Garcia agreed with the substance of Bayless's opinion. The prosecutor objected to this as an unresponsive answer and moved to strike. The court denied the motion, ruling, as his discretion permits, that the prosecutor "invited" the particular answer by asking broad, non-leading questions. On redirect, Bayless again began to refer to Garcia, but defense counsel cut him off.

Before closing argument, the trial judge instructed defense counsel not to refer to Garcia's opinion, and counsel responded he did not intend to. Yet defense counsel argued to the jury that "Dr. Bayless answered that he checked with Dr. Garcia, and Dr. Garcia concurred in his opinion." RT, Jan. 22, 1986, at 67. This time the court sustained the prosecutor's objection. Defense counsel justified his actions by pointing out that because the court refused to strike Bayless's reference to Garcia's opinion during cross-examination, he legitimately could argue it to the jury. The judge disagreed and instructed the jury to disregard that portion of defense counsel's argument.[4]

During its deliberations, the jury sent out a note asking for a transcript of Bayless's testimony. The court responded that no transcript was available, but all the testifying doctors' testimony could be read in open court, taking approximately six to eight hours. The jury wrote they were specifically interested in Bayless's references to other physicians' opinions, but if that portion alone could not be read back they would rely on their memories and notes. The jury chose not to request the reading of any testimony and subsequently returned the manslaughter verdict.

## B. Disclosure of a Non–Testifying Expert's Opinion

Rule 703 allows an expert to testify as to his opinion based on "facts or data" not in evidence but perceived or "known" to him before the hearing. If the facts or data are of a "type reasonably relied upon by experts in the particular field ... the facts or data need not be admissible in evidence."[5] Thus an expert witness on direct examination may disclose facts or data that have not been admitted in evidence—and that may not be admissible—if they form a basis for his opinion and if of a type reasonably relied on by

---

**3.** These triggering events are described as "psychosocial stressers." One indication of brief reactive psychosis is psychotic, bizarre, or unconventional behavior following such stressers. RT, Jan. 20, 1986, at 32–33, 54–56.

**4.** The court later privately commented that perhaps it should have stricken Bayless's reference to Garcia's opinion, but did not because it would have called undue attention to the reference.

**5.** The comment to our Rule 703 states that the phrase "if of a type reasonably relied upon...." applies to any fact or datum upon which an expert seeks to rely, even if the fact or datum is independently admissible. *See* Rule 703, Comment, *reprinted in* 17A A.R.S. at 123–24 (1988).

experts in the field. *Hernandez v. Faker*, 137 Ariz. 449, 453, 671 P.2d 427, 431 (Ct. App.1983). Once disclosed, the facts or data are not admitted as substantive evidence, but only for purposes of showing the basis of the expert's opinion. *Lynn v. Helitec Corp.*, 144 Ariz. 564, 568, 698 P.2d 1283, 1287 (Ct.App.1984); Rule 703, Comment (reasonably relied on facts or data "become admissible under this rule for the limited purpose of disclosing the basis for the opinion unless" excluded by applicable law), *reprinted in* 17A A.R.S. at 123–24 (1988).

We now address the two dispositive questions under Rule 703: (1) Did Bayless rely on Garcia's opinion and was that reliance reasonable, and (2) is a non-testifying expert's concurring opinion a disclosable fact or datum within the meaning of the evidentiary rules?

### 1. *Did Bayless Reasonably Rely on Garcia's Opinion?*

■ The court of appeals believed the trial court found "that Bayless, by the time of trial, had relied on Garcia's opinions at least to some degree." *Lundstrom*, 157 Ariz. at 490, 759 P.2d at 636. The question of whether an expert relied on out-of-court material and if that reliance is reasonable is one within the trial court's discretion. Rule 104; Rule 703, Comment; J. Weinstein & M. Berger, *Weinstein's Evidence* § 703[03], at 703–16 (1988) (hereafter Weinstein). That Bayless's reliance on Garcia's opinion was reasonable cannot seriously be disputed. *See Hernandez*, 137 Ariz. at 454, 671 P.2d at 432 (testifying expert may reasonably rely on medical opinions of a non-testifying doctor); M. Udall & J. Livermore, *Arizona Practice—Law of Evidence* § 23, at 12 (2d ed. Supp.1989) (hereafter Udall) ("It is hard to say ... that it is not reasonable [for experts] to rely on ... shared opinions"). One doctor's reliance on

the report or opinion of another qualified doctor is practically the paradigm of reasonable reliance. *See* Rule 703, Fed.R. Evid., Advisory Committee Note. The state, however, challenges whether Bayless actually relied on Garcia's opinion. *See Sharman v. Skaggs Co.*, 124 Ariz. 165, 169, 602 P.2d 833, 837 (Ct.App.1979) (hearsay opinions not considered by testifying expert are inadmissible).

■ Bayless's testimony unequivocally indicates his normal practice when performing psychological evaluations is to consult with other experts. For Bayless not to have considered information from Garcia after their accidental encounter would be surprising indeed. Garcia was, after all, the first psychiatrist to examine Lundstrom after the crime. The trial judge did not abuse his discretion in concluding that Bayless reasonably relied on Garcia's substantiating opinion as part of the foundation for his *trial testimony*, if not for his pre trial written report. Moreover, defense counsel at in-chambers argument drew this clear distinction between what Bayless relied on in preparation for his written report and what he relied on for his trial testimony. The distinction is proper: Rule 703 allows an expert to utilize facts or data made known to him at or before the trial; the text does not confine the expert to those facts made known to him and relied on by him for the preparation of a report.

We realize this interpretation of Rule 703 creates the potential for unfair surprise at trial. For instance, in this case the record suggests that Bayless's reference to his reliance on Garcia's opinion was completely impromptu and unforeshadowed by any pretrial disclosure. Such disclosure may have been required by Rules 15.2(c)(2) and 15.6, Ariz.R.Crim.P., 17 A.R.S. If the state was in fact surprised,[6] ordinarily the proper remedy would include a sufficient recess to allow the state to reinterview Bayless,

---

6. For all this record shows, defense counsel may well have been as surprised as the prosecutor when the Garcia reference surfaced. In any event, the record does not show any intentional violation of the discovery obligations set forth in criminal procedure Rules 15.2 and 15.6. Exclusion of admissible evidence for failure to

comply with discovery rules is a permissible sanction. Rule 15.7(a)(4), Ariz.R.Crim.P., 17 A.R.S. However, nothing in the record indicates that grounds for such a sanction exist in this case. Nor does the state argue here that the evidence should have been excluded on such grounds.

interview Garcia, and perhaps, if the prosecutor wished, call Garcia as a rebuttal witness. *See* Weinstein, § 703[03], at 703–33 (suggesting Rules 611(b) and (c) allow an opposing party to call the authors of opinions relied on by testifying experts and examine them by cross-examination). The record does not disclose that the state made such a request.

Bayless relied on Garcia's medical opinion for his trial testimony. That reliance was reasonable. Thus, if another doctor's concurring opinion is a fact or datum within the meaning of the expert opinion rules, the trial court erred by limiting Bayless's testimony to the bare fact of his consultation with Garcia.

### 2. Is a Non–Testifying Expert's Concurring Opinion a Disclosable Fact or Datum within the Meaning of the Evidentiary Rules?

The history of the rules is silent on this issue. *See* Udall, § 23, at 11 (2d ed.Supp.1989). The original Advisory Committee's Note to Rule 703, Fed.R.Evid., states that a testifying expert may base his opinion on " 'reports and *opinions* from ... other doctors....' " Weinstein, § 703[03], at 703–3 (quoting Advisory Committee Note) (emphasis added).

A testifying expert may rely on the opinions of other experts if such reliance is "the kind of material on which experts in the field base their opinions." *Lewis v. Rego,* 757 F.2d 66, 74 (3d Cir.1985); *Hernandez,* 137 Ariz. at 453–54, 671 P.2d at 431–32; *see also United States v. Phillips,* 515 F.Supp. 758, 762–63 (E.D.Ky.1981); Weinstein, § 703[03], at 703–25 n. 23; Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurances of Trustworthiness,* 1986 U.Ill.L.Rev. 43, 64. The question becomes whether the substance of the other expert's opinion may be disclosed to the trier of fact.

In *Lewis,* the plaintiff's expert testified on direct that in forming his professional opinions he normally relied in part on conversations with colleagues possessing similar technical backgrounds. He indicated he did so in this case and identified the other non-testifying expert by name. On the basis of that conversation and his own expertise, he rendered an opinion. When plaintiff's counsel asked the expert if there was any agreement between him and the non-testifying expert, the court sustained the defendant's objection. 757 F.2d at 73–74. On appeal, the court of appeals held the trial court erred in precluding, without apparent reason, the full development of the bases of the testifying expert's opinion, including the substance of the testifying expert's conversation with the non-testifying expert. *Id.* at 74.

In *Hernandez,* the court overruled the hearsay objection and allowed the expert to testify about certain conclusions found in another expert's report. The court of appeals affirmed, holding that a conclusion of a non-testifying expert was a fact within the meaning of Rule 703 and could be disclosed to the factfinder. 137 Ariz. at 453–54, 671 P.2d at 431–32. *See also* Graham, *supra,* 1986 U.Ill.L.Rev. at 65 (underlying facts and opinions may be disclosed to factfinder).

In *Phillips,* the court permitted the expert to testify to the contents of a non-testifying expert's report on which he relied. 515 F.Supp. at 762–63. This is analogous to Bayless's reliance on Garcia's verbal report and then relaying the substance of that report to the jury for the limited purpose of revealing the basis for his opinion.

One objective of the expert opinion rules is to conform court practice to reality. *See* Rule 703, Fed.R.Evid., Advisory Committee Note. Experts in all professions sometimes rely on the opinions of other experts. *See id.* In the real world, the surgeon at the operating table may rely on the nurse's report of the pathologist's opinion of the frozen section of tissue before deciding on the type of procedure necessary to complete the surgery. Surely, then, the doctor in the courtroom may rely on his colleagues' opinions in completing his trial testimony. Triers of fact must have foundational information to assess adequately the weight to be given an expert opinion. *See* Udall, § 23, at 37 (2d ed.1982). We

agree that under most circumstances an expert may testify as to the substance of another expert's opinion if the testifying expert reasonably relied on that other opinion in forming his own opinion.

The fact that Garcia's diagnosis either paralleled or diverged from Bayless's is crucial. Garcia saw, observed, and evaluated Lundstrom at the county jail the day after the shooting and assigned him to a psychiatric ward. Bayless, retained as an expert long after the event, was subject to attack on the retrospective nature of his opinion. Thus, on cross-examination, when the prosecutor challenged Bayless's high degree of certainty about his diagnosis, Bayless properly invoked Garcia's concurrence as support for that certainty.

■ Moreover, to reveal the substance of Garcia's opinion is not to reveal hearsay. Facts or data underlying the testifying expert's opinion are admissible for the limited purpose of showing the bases of that opinion, not to prove the truth of the matter asserted. *Lynn*, 144 Ariz. at 568, 698 P.2d at 1287. Thus Bayless's testimony that Garcia concurred in his diagnosis was not evidence that Lundstrom was insane, but only a partial basis for Bayless's opinion. *See Jefferis v. Marzano*, 298 Or. 782, 791–95, 696 P.2d 1087, 1093–95 (1985) (expert's enumeration of specific doctors and institutions practicing medical procedure at issue was admissible as a basis for expert's opinion and was not impermissible hearsay); Graham, *supra*, 1986 U.Ill.L.Rev. at 66. Pursuant to Rule 105, the state could have sought a limiting instruction to this effect but did not do so. *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 450, 719 P.2d 1058, 1066 (1986) (once evidence is admitted for a limited purpose "it is error for the court to fail to give the requested limiting instructions").

■ We note the dangers lurking in our interpretation of Rule 703 and we add, therefore, that the right to disclose the bases of an expert opinion on direct examination is not absolute. Under Rule 403, a trial court may weigh the value of admitting the facts or data sought to be disclosed as a basis of an expert opinion against the dangers of unfair prejudice arising from such disclosure. Weinstein, § 703[03], at 703–31. The record does not indicate the trial judge precluded Bayless's references pursuant to the balancing test found in Rule 403. Nor apparently was he asked to do so. Instead, the trial judge appears to have enunciated an unyielding rule of law.

■ We caution also that if the testifying expert merely acts as a conduit for another non-testifying expert's opinion, the "expert opinion" is hearsay and is inadmissible, Rule 703 notwithstanding. *Id.* at 703–25 n. 23; *see also United States v. Williams*, 431 F.2d 1168, 1172 (5th Cir. 1970) (applying pre-Rule 703 law, an expert who consults and merely summarizes the content of a hearsay source without applying his own expertise is merely a hearsay witness).[7]

## C. The New Mexico and California Cases

The state relies heavily on a series of cases from New Mexico. In *Wilson v. Leonard Tire Co.*, 90 N.M. 74, 559 P.2d 1201 (Ct.App.1976), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1977), the court reversed a trial court ruling allowing the introduction of reports during the cross-examination of a testifying expert. The reports contained the opinions of non-testifying experts. The state here advances *Wilson* for the proposition that Rules 703 and 705 do not allow a testifying expert to base his opinions on the opinions of non-testifying experts. We do not read *Wilson* that broadly. *Wilson* focuses on the fact that the testifying expert *did not rely* on the other opinions. That portion of the *Wilson* opinion stating that Rules 703 and 705 did not authorize the admission of the non-testifying doctors' opinions refers to those the testifying ex-

---

7. The fifth circuit, in a later rehearing, reversed the panel's decision. *United States v. Williams*, 447 F.2d 1285, 1292 (5th Cir.1971) (en banc), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972). The *en banc* court, however, reversed the panel on this issue, not because it disagreed with the panel's legal analysis, but only because it disagreed with the panel's characterization of the testifying expert as a summary witness.

pert did not rely on, not to opinions generally. *See id.* at 76–77, 559 P.2d at 1203–04.

*O'Kelley v. State*, 94 N.M. 74, 607 P.2d 612 (1980), relying on the broader reading of *Wilson*, and without analysis, holds that a non-testifying expert's opinion was not a fact or datum within the meaning of Rule 703. The cases cited in that opinion for the proposition that a testifying expert may not base his opinion on the opinions of non-testifying experts were decided before the effective date of the modern Federal Rules of Evidence and do not reflect current law. *See* 94 N.M. at 76–77, 607 P.2d at 614–15. We find *O'Kelley* unpersuasive. Likewise, we reject *Sewell v. Wilson*, 101 N.M. 486, 684 P.2d 1151 (Ct.App.1984), which relies on *O'Kelley* and thus *Wilson*.

Among the cases uncovered by our own research, *Mosesian v. Pennwalt Corp.*, 191 Cal.App.3d 851, 236 Cal.Rptr. 778 (1987), propounds the rule utilized by the trial judge here. There the court held "[i]t is proper to solicit the fact that another expert was consulted to show the foundation of the testifying expert's opinion, but not to reveal the content of the hearsay opinion." *Id.* at 859–61, 236 Cal.Rptr. at 782 (citing *People v. Piper*, 103 Cal.App.3d 102, 112, 162 Cal.Rptr. 833, 839 (1980), *disapproved on other grounds, People v. Hall*, 28 Cal.3d 143, 156, 167 Cal.Rptr. 844, 851, 616 P.2d 826, 833 (1980)). Apparently, one exception to this general proscription against revealing the non-testifying expert's opinion is to admit that opinion if the testifying expert used it in his own diagnosis or treatment of a subject. *Piper*, 103 Cal.App.3d at 112, 162 Cal.Rptr. at 839. The object of the California rule is to prevent opening the floodgates to out-of-court opinions. *Mosesian*, 191 Cal.App.3d at 860–61, 236 Cal.Rptr. at 782. *Mosesian* does not change our position on this issue. Our rules do not follow the California model.

First, we note that California has not adopted Rules 703 and 705 from the federal model. California law still limits the introduction in testimony of material forming the basis of an expert opinion to matters that are "admissible." *Mosesian*, 191 Cal. App.3d at 861, 236 Cal.Rptr. at 783. In contrast, our expert opinion rules contemplate disclosure of hearsay to the jury. *See* Rule 703 ("the facts or data need not be admissible in evidence"); Rule 705 ("The expert ... may be required to disclose the underlying facts or data on cross examination").

Second, the requirement of reasonable reliance found in Rule 703 gives an adequate guarantee of trustworthiness to the outside opinions. This requirement renders unnecessary the stricter exception (opinions of others used by testifying expert in treatment or diagnosis may be related to the factfinder) California has to its general rule forbidding the revelation of the content of non-testifying expert's opinions.

Third, the availability of appropriate limiting instructions, the conscientious application of Rule 403, a strict insistence that reliance be objectively reasonable,[8] and a steadfast refusal to allow experts to act as mere conduits for the opinions of other experts will prevent a flood of hearsay from tainting our juries.

Finally, abuse may be curtailed simply by applying or enacting disclosure requirements so that the opponent may discover, interview, and, if desired, call the non-testifying expert whose opinion will be disclosed at trial.

### ERROR IN LIMITING CLOSING ARGUMENT

From what we have already held, it follows that Garcia's concurrence was a fact or datum eligible for disclosure

---

8. In this case, as in most others, the facts are determinative. The singular facts of this case illustrate both the limitations and benefits of the rule we adopt. Given the facts here, it would have been unreasonable and unnatural for Bayless, in encountering the psychiatrist who knew most about Lundstrom's condition, to have

failed to discuss the matter with Garcia and give appropriate consideration to Garcia's observations and findings. This is not a case in which an expert is retained, reaches an opinion, and then commences an expedition to look for and invite the opinions of other experts who may reinforce his position.

during cross-examination. Rule 705.[9] Rule 705 "is not designed to leave out foundational information that would be helpful to the trier of fact in assessing the weight to be given an opinion." Udall, § 23, at 37 (2d ed.1982). By asking non-leading, open-ended questions on cross-examination, the prosecutor invited repetition of the fact of Garcia's concurrence on cross-examination. The trial court did not strike the testimony. More importantly, the evidence was admissible. If anything, the trial court erred in restricting the admission of the details of Garcia's opinion. Therefore, the court erred in striking defense counsel's argument relative to Garcia's concurrence. Defense counsel may rightfully argue all evidence properly admitted, notwithstanding its admission for a limited purpose. Here Lundstrom's counsel properly could argue Garcia's concurrence so long as he was not trying to argue it as substantive evidence of insanity. *See Lynn*, 144 Ariz. at 568, 698 P.2d at 1287.[10] Garcia's concurrence was admissible to show a basis of Bayless's opinion and to provide the jury with a means to judge the weight and credibility of Bayless's testimony.

### HARMLESS ERROR ANALYSIS

■ The court of appeals believed that any errors in excluding Bayless's testimony about Garcia were harmless beyond a reasonable doubt. *Lundstrom*, 157 Ariz. at 491, 759 P.2d at 637. Error is harmless or non-prejudicial[11] when it can be said beyond a reasonable doubt that the error did not affect the verdict. *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1981).

■ The court of appeals rested its harmless error view on two points. First, because Garcia's concurrence was not entitled to substantive weight, the "pertinence of this additional information was ... slight" and, therefore, harmless. *Lundstrom*, 157 Ariz. at 491, 759 P.2d at 637. Second, the jury actually did hear that Garcia concurred with Bayless in his diagnosis of brief reactive psychosis. *Id.*

The first part of the appellate court's analysis, however, ignores the jury's note to the trial judge seeking transcripts of Bayless's testimony regarding his discussions with other experts. To say the errors had, beyond a reasonable doubt, no effect on the verdict is sheer speculation on the nature of the jury's interest in this particular portion of Bayless's testimony.

We also disagree with the view that the pertinence of this evidence was slight. Even though Garcia's opinion was not substantive evidence of insanity, it added to the weight and credibility of the testimony of Lundstrom's only mental health expert. Because Lundstrom's defense rested almost entirely on his expert's credibility in the face of the partially conflicting opinion of the state's expert, we cannot say the excluded evidence and prohibited argument were of slight value and the error therefore harmless beyond a reasonable doubt. *See State v. Lindsey*, 149 Ariz. 472, 477, 720 P.2d 73, 78 (1986). It is difficult to characterize as harmless the erroneous ex-

9. Rule 705 permits an expert to state his opinion without prior disclosure of the bases of his opinion, unless the court directs otherwise; on cross-examination, the expert may be required to reveal the bases of his opinion.

10. The record indicates that before argument the trial judge told defense counsel not to argue Garcia's concurrence, and counsel acquiesced. In an apparent reversal of his position, defense counsel commenced to argue the matter and was interrupted and reminded by the judge of the previous avowal that the matter would not be argued. At this time, defense counsel raised the proper legal argument and objected to the court's eventual ruling preventing the argument. That ruling, made during argument, like the ruling made before argument, was not based on

defense counsel's waiver but, rather, on the judge's view that the argument was legally improper because the evidence was not substantively admissible. By reversing, we do not indicate that the trial judge would have erred had he stopped counsel's argument because counsel had waived the issue before argument.

11. At the risk of appearing pedantic, we note the tendency to reserve the phrase "harmless error" for cases involving constitutional error and "prejudicial error" for non-constitutional errors. *See State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1981). Whatever value this distinction may have, the test remains the same—whether we can say beyond a reasonable doubt that the error had no influence on the jury's verdict. *Id.*

clusion of a basis for the ultimate opinion related by a party's only psychological expert, testifying on the only true issue in the case.

 Nor can we agree with the court of appeals that the error was obviated because the jury actually heard testimony that Garcia concurred with Bayless. Although the jury heard that testimony, when counsel attempted to argue the testimony, the court instructed the jury to disregard the argument. We cannot say, beyond a reasonable doubt, that no juror could have concluded that Bayless's references to Garcia were of little or no evidentiary value.

### DISPOSITION

Because we reverse on the expert testimony and closing argument issues, we do not reach the allegation of errors in the insanity defense instructions. We vacate that portion of the court of appeals opinion concerning Bayless's testimony and closing argument. We reverse the judgment of conviction and remand for a new trial.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., retired before the decision of this case.

CORCORAN, J., did not participate in the determination of this case.