799 P.2d 23

**STATE of Arizona, Appellee,**

v.

**Sandra Kay LINDEKEN, Appellant.**

**No. 1 CA–CR 88–463.**

Court of Appeals of Arizona, Division 1, Department C.

June 14, 1990.

Review Denied Oct. 23, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Debus, Bradford and Kazan, Ltd. by Larry L. Debus, Lawrence I. Kazan, Phoenix, for appellant.

## OPINION

GERBER, Judge.

Sandra Kay Lindeken (defendant) appeals from her manslaughter conviction and the sentence imposed. The pertinent facts for our review are as follows.

## FACTS

Lindeken was the sister-in-law of the victim, Mary Fillingham. On the morning of August 7, 1987, Lindeken and the victim fought inside the victim's house. Lindeken stabbed the victim seven times. She died as a result. The victim had bruises and scrapes on her body, plus a missing tooth. Dirt and broken pottery were scattered on the floor. Lindeken suffered two contusions on her head and a fractured cheekbone.

When Lindeken was apprehended, she stated "[H]e tried to get both of us." She later told a detective that a masked man broke into the house, struggled with the victim and herself, and "knocked her out." She denied fighting with the victim.

Lindeken was charged by indictment with first-degree murder. She admitted at trial that she had killed the victim, but argued that she had done so in self-defense and alternatively that she was insane at the time of the act. She did not testify. Two expert witnesses recounted her story as she had relayed it to them. Psychologist Michael Bayless and psychiatrist Mark Wellek testified that the victim had slapped Lindeken and the two had had a violent fight. During the struggle, the victim struck her on the face with a tape recorder and had hit her over the head with a pot. The victim had bitten Lindeken's finger, causing her tooth to fall out.

Bayless testified that Lindeken did not remember holding or grabbing a knife. She told Wellek that "I saw a Chicago Cutlery knife. Then the next thing I saw [was the victim] on the floor with blood." She did not tell Bayless or Wellek that she had lost consciousness. Both experts testified that Lindeken experienced a brief reactive psychosis during the incident, i.e., she suffered from a temporary psychosis fol-

lowing a particularly stressful event. The experts also stated that during that time she did not understand right from wrong.

Neurologist Scott Tyler testified that he thought Lindeken had a concussion resulting from the struggle. Tyler stated that he did not know Lindeken's mental state at the time of the crime and that his opinion was based on Lindeken's statements to him.

The state's two expert witnesses testified that Lindeken did not have a brief reactive psychosis and understood the difference between right and wrong at the time of the act. The jury found Lindeken guilty of manslaughter. She timely appeals, raising the following issues for our review:

Did the trial court err by denying Lindeken's requested instruction on unconsciousness?

Did the trial court err by not finding a juror guilty of misconduct?

Did the trial court err by precluding Lindeken's use of several statements?

## ANALYSIS

### 1. *Jury Instructions*

■ At trial, Lindeken requested the court to instruct the jury on the "defense of unconsciousness." The court refused to do so but did instruct the jury on self-defense and insanity theories. The trial court also instructed the jury as follows:

A minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a duty imposed by law which the person is physically capable of performing.

*A voluntary act means a bodily movement performed consciously* and as a result of effort and determination. (Emphasis added.) Lindeken claims that the trial court erred by refusing to instruct the jury on the defense of unconsciousness. We disagree. A.R.S. § 13–201 provides that criminal liability may be predicated only on a "voluntary act." Section 13–105(34) defines a voluntary act as "a bodily movement performed consciously and as a result of effort and determination." Thus, unconsciousness is not a separate affirmative defense but is subsumed within the concept of "voluntary act" which the state must prove by statute.[1] The jury was properly instructed consistent with this statute that the state had to prove that Lindeken acted consciously and therefore voluntarily.

■ In any event, the evidence does not support an unconsciousness instruction. Lindeken's experts did not testify that she lost consciousness. Her main defenses were that she acted in self-defense or alternatively that she was legally insane at the time of the act. Accordingly, the trial court did not err by refusing Lindeken's requested instruction on unconsciousness.

### 2. *Juror Misconduct*

Lindeken next claims that a juror committed misconduct by violating Rule 24.1(c)(3)(i) and (iii), Arizona Rules of Criminal Procedure[2] and that the trial court erred by denying a new trial on that basis.

■ The questionnaire given to the jurors in voir dire included the following: State your training or experience, if any, in the following disciplines:
(a) Psychiatry or psychology?

---

**1.** Lindeken primarily relies on California case law which recognizes unconsciousness as a defense. Unlike Arizona, however, California recognizes the defense by statute. *See* California Penal Code, § 26. Contrary to Lindeken's assertion, Arizona case law has not recognized unconsciousness as an affirmative defense. *See, e.g., State v. Venegas,* 137 Ariz. 171, 669 P.2d 604 (App.1983) (holding that the state must prove a conscious act under A.R.S. § 13–201 and that unconsciousness caused by voluntary intoxication is not a defense to a general intent crime).

**2.** Rules 24.1(c)(3) provides in relevant part:
A juror or jurors have been guilty of misconduct by:
i. Receiving evidence not properly admitted during the trial;
. . . .
iii. Perjuring himself or willfully failing to respond fully to a direct question posed during the voir dire examination ...

. . . .

Have you or any of your close friends or relations *had any experience with or knowledge of* psychiatry, psychology or mental institutions?

(Emphasis added.) One potential juror answered the questions in the negative. However, he later told other jury members, one of whom related these statements, that in 1979 he had "beat up his wife" during a "brief reactive psychosis," had "received some kind of psychiatric or other counseling subsequent to that" and "during his brief reactive psychosis he knew what he was doing and knew what he was doing was wrong."

■ The record on appeal only indicates that the juror received some type of unspecified counseling. On this record, which consists of one juror's recollections of the other juror's statements, we are unable to conclude that the juror willfully failed to respond to the questions regarding his "experience with or knowledge of" psychiatry or psychology. Our view might be different if the question unambiguously asked about personal psychological treatment. Lindeken's further assertion that the juror inaccurately answered an oral question by the court that neither he nor a member of his family had been the victim of a crime is also meritless because the record does not show any such victimization.

■ Even if these statements were made, the juror did not commit misconduct by relating his "reactive psychosis" experience to his fellow jurors. While jurors may not receive information from an outside source nor act as expert witnesses in the jury room, they are entitled to rely on and to relate their own common sense and life experiences during deliberations. Here the record reveals only the statement quoted above without any indication that the jury was improperly pressured to apply this juror's personal experience to the case at hand. *State v. McLoughlin,* 133 Ariz. 458, 652 P.2d 531 (1982). *Accord State v. Leonard,* 151 Ariz. 1, 725 P.2d 493 (App. 1986) (no error where juror related his own DWI experiences during deliberations of a DWI trial).

Granting a new trial for jury misconduct is within the discretion of the trial court. *State v. Rodriguez,* 125 Ariz. 319, 609 P.2d 589 (App.1980). There is no showing that the trial court abused its discretion.

### 3. Statements Regarding Self–Defense

Lindeken next claims that the trial court erred by denying her the right to use her statements to experts Bayless and Wellek as substantive evidence of self-defense.

Before trial, the state sought to preclude these statements. Lindeken persuaded the trial court that her statements to her experts were admissible because they formed a basis for their opinions of insanity. The court agreed to allow their use solely for that basis.

■ Before closing arguments began, Lindeken again asked the court to allow her to use the evidence substantively because, in the defense view, the state had opened the door to such use by cross-examining the defense experts about the facts told them by Lindeken. The court responded again that the statements could only be used as the basis of the doctors' opinions, and that Lindeken could not use them to prove self-defense. The court also noted:

I don't think [the state] has received any sort of benefit along the lines of motive, character or such. The—and in addition, just so that the record is crystal clear, if we're making assertions that [the state] has attained benefit, [Lindeken] has certainly attained the benefit of my ruling by allowing the ruling of [her] psychiatrist as self-defense to come before the jury which, obviously, while we instruct the jury that they are only to be considered on the issue of insanity and not on the issue of self-defense, none of us are ignorant enough to believe that those statements don't have some effect on the jury.

It has certainly been a means to get [Lindeken]'s statements before the jury so that they could be considered and be thought about. So there is a benefit on both sides.

It's not the ideal situation, but in order that the doctors' opinions can be explained to the jury and examined, those statements have to come out.

The state did not open the door to a substantive use of the statements for the state had the right to fully cross-examine the experts regarding those statements. *See State v. Tallabas*, 155 Ariz. 321, 746 P.2d 491 (App.1987). The defense could not use the statements as a sword and then claim privilege as a shield against their use or preclude cross-examination by the prosecution. *State v. Turrentine*, 152 Ariz. 61, 730 P.2d 238 (App.1986).

 After the state's closing argument, Lindeken asserted that in discussing the term "heat of passion" in regard to manslaughter, the prosecutor had cited her statements to the doctors. The court again denied the motion:

> I think you've obtained a substantial benefit already from the Court's ruling as to these statements coming in. And to allow you then to bootstrap into the situation where A, [the state] isn't able to discuss the statements as they relate to insanity and B, allow you to get those in as substantive evidence of self-defense I think gives you far more of the apple than you should get.

Lindeken did not object during the prosecutor's closing argument. It is the duty of defense counsel to make objections at the earliest opportunity in order that the court may correct possible errors by appropriate instructions. *State v. Mitchell*, 140 Ariz. 551, 683 P.2d 750 (App.1984). In any event, the state's closing argument refers only to other admissible evidence, not to defendant's statements to her doctor experts. Thus, this argument does not open the door to substantive use of the defendant's statements to her doctors.

Furthermore, the court properly limited the scope of argument. In *State v. Lundstrom*, 161 Ariz. 141, 776 P.2d 1067 (1989), the Arizona Supreme Court held that under Rule 703, Arizona Rules of Evi-

dence, an expert witness could use a nontestifying expert's opinion to buttress his own if the other opinion was a basis for his own opinion. There the court noted that counsel could argue that the hearsay supported the expert opinion, but could not argue it as substantive evidence of insanity. *Id.* at 150, 776 P.2d at 1076. *See also Lynn v. Helitec Corp.*, 144 Ariz. 564, 698 P.2d 1283 (App.1984).[3] Similarly, Lindeken's statements to Bayless and Wellek were a basis for their opinions and were properly admitted.

For the foregoing reasons, the conviction and sentence are affirmed.

CONTRERAS, P.J., and McGREGOR, J., concur.

---

3. Lindeken's statements to Bayless and Wellek do not fall within the hearsay exceptions of Rule 803, Arizona Rules of Evidence. The trial court therefore properly limited their use. *See State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987).