NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE MS2015-000003

No. 1 CA-MH 16-0083 SP
FILED 9-21-2017

---

Appeal from the Superior Court in Maricopa County
No. MS2015-000003
The Honorable Edward W. Bassett, Judge, *Retired*

**AFFIRMED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Kyra Goddard
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Jennifer B. Campbell joined.

---

**B R O W N**, Judge:

¶1        Appellant challenges the superior court's order committing him to the custody of the Arizona Department of Health Services after a jury found him to be a sexually violent person ("SVP").  Appellant argues the superior court erred by (1) continuing his trial beyond the 120-day timeframe set forth in Arizona Revised Statutes ("A.R.S.") § 36-3706, (2) admitting evidence of Appellant's prior bad acts, and (3) allowing hearsay evidence to be introduced through the testimony of the State.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Appellant was previously convicted of indecent exposure to a minor in 2001 and placed on probation.  He was convicted of attempted child molestation in 2010 and sentenced to prison.  Appellant's scheduled release date from the Arizona Department of Corrections ("ADOC") was April 25, 2015.  On April 21, 2015, the State filed a petition requesting that the court find probable cause to declare Appellant an SVP pursuant to A.R.S. § 36-3704.  Three days later, the court found probable cause to believe Appellant was an SVP and ordered that Appellant be transported to the Arizona Community Protection and Treatment Center ("ACPTC") upon his release from prison.  Following a probable cause hearing in June 2015, the superior court re-affirmed its finding that there was probable cause to sustain the petition.  After several delays, the case proceeded to trial in October 2016.

¶3        Dr. Barry Morenz, a licensed psychiatrist, testified at trial on behalf of the State.  The jury unanimously found Appellant to be an SVP and Appellant timely appealed from the superior court's subsequent commitment order.  We have jurisdiction over this appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(10).

## DISCUSSION

**A.    Trial Continuances**

¶4        Appellant argues the superior court erred by not conducting a trial within 120 days, as required by A.R.S. § 36-3706, which provides as follows:

> Within one hundred twenty days after a petition is filed pursuant to § 36–3704, the court shall conduct a trial to determine if the person named in the petition is a sexually

> violent person. . . .  The judge may continue the trial at the request of either party on a showing of good cause or on its own motion if the person will not be substantially prejudiced.

¶5	Trial was originally scheduled for August 24, 2015, but was continued to November 16 at the request of Appellant's counsel, as counsel was recently appointed to the case.  Prior to the November trial date, given that the State was apprised that Appellant could have new charges pending and his second chair attorney would be unavailable, the parties jointly filed a motion to continue.  The court continued the trial until February 8, 2016.  Shortly thereafter, Appellant's community supervision status was revoked and he was returned to ADOC, with a scheduled release date in September 2016, which prompted the State to request a stay of the proceedings.  Appellant requested dismissal of the petition.  In response, the State again requested a stay, or, in the alternative, that it be continued.  The court "grant[ed] the [State's] Motion for the Alternate Relief of a Continuance, based upon the fact that [Appellant] has been incarcerated . . . and is expected to be incarcerated . . . through his maximum date of September 16, 2016."  The court further ordered that Appellant be transferred to the ACPTC upon completion of his prison term, and reset the trial date to October 17, 2016.

### 1.	First Two Continuances

¶6	Because Appellant failed to object to the first two continuances granted by the superior court, we review only for fundamental error.  *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).  Fundamental error review is applied sparingly in civil proceedings, but we may apply it in situations that may result in the denial of a constitutional right.  *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 23 (App. 2005).  To establish fundamental error, Appellant "must show that the error . . . goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial."  *Henderson*, 210 Ariz. at 568, ¶ 24.  Appellant also bears the burden of showing he was prejudiced by that error.  *Id.* at ¶ 26.

¶7	Appellant relies on *Fuller v. Olson ex rel. County of Pinal*, 233 Ariz. 468 (App. 2013).  In that case, the superior court failed to appoint counsel or schedule a trial on the SVP petition for longer than one year after the State filed a petition.  233 Ariz. at 470, ¶¶ 2-3.  On review, this court held that Fuller was prejudiced by not receiving the "treatment that would have been available to him had he been afforded his trial and been found to be an SVP."  *Id.* at 473, ¶ 15.  We explained that if the superior court found

Fuller to be sexually violent after a timely trial, he would have received "treatment that might have alleviated his condition to the point where he was eligible for conditional release upon his yearly review [under A.R.S. § 36–3708(A)], an event that would already have occurred in absence of that violation." *Id.* at 474, ¶ 15.

**¶8** Unlike the situation in *Fuller*, in this case the first two trial settings were continued at Appellant's request, at least in part. And there was a reasonable basis for the continuances: the first provided Appellant's newly-appointed counsel time to prepare for trial and the second permitted second-chair counsel for Appellant to avoid a trial conflict, and gave the parties and the court time to see if Appellant's community supervision would be revoked. We find no error, much less fundamental error.

## 2. Third Continuance

**¶9** The third continuance was granted over Appellant's objection. "[A] court considering a motion to postpone the trial beyond the 120-day limit or a motion to dismiss after the limit has been exceeded must determine whether there is 'good cause' for the delay attributable to a request from either party." *Ugalde v. Burke*, 204 Ariz. 455, 458, ¶ 9 (App. 2003). "Whether the facts of a particular case establish 'good cause' is a matter left to the sound discretion of the trial court." *Id.* at ¶ 10. To determine good cause, "the court should carefully balance the reasons for the delay with the potential of prejudice to the alleged SVP from continued confinement while awaiting trial," *id.* at ¶ 10, and may consider the following factors:

> [W]hether the original 120 days have already elapsed; the length of any confinement beyond the 120-day limit; the reasons for any past delay or requested postponement; whether unusual discovery or procedural problems prevented the case from proceeding to trial within 120 days; unavailability of witnesses or other evidence; whether the alleged SVP caused, contributed to, or consented to the delay; whether the State diligently prosecuted the case; whether the alleged SVP sought a timely trial or warned the court and the State of the running of the 120-day period; whether the alleged SVP has been receiving treatment while confined or whether the person has simply been "warehoused"; the potential prejudice to the alleged SVP from the delay; the protection of the public; and any other factors that may be

relevant in a particular case and consistent with the purposes
of the SVP Act.

*Id.* at ¶ 11 (footnotes omitted).

**¶10**　　　Here, the original 120 days had elapsed long before the third
motion to continue was granted.　In fact, the 120-day limit had already
elapsed at the time of the second trial setting, without objection by
Appellant.　The first continuance was not attributable to the State; nothing
in the record indicates that the State would not have been ready for the first
scheduled trial date.　More importantly, the State filed its motion to
stay/motion to continue *after* Appellant violated his community
supervision and was reincarcerated, further contributing to the delay in
proceeding to trial.　Although Appellant did not receive treatment while
confined, he was not simply "warehoused" throughout the time trial was
postponed.

**¶11**　　　Appellant and his counsel were presumably aware that
resolution of the petition and any treatment would be delayed by
continuing the trial.　Further, Appellant objected only to the third
continuance, which resulted in approximately one additional month of
confinement in ACPTC (the month between his September release from the
AZDOC and the October 2016 trial).　On this record, Appellant has not
shown that the court abused its discretion in granting the third motion to
continue.

## B.　　Prior Bad Acts

**¶12**　　　Appellant argues the superior court erred by permitting
evidence of Appellant's prior bad acts in violation of evidentiary rules,
primarily Arizona Rule of Evidence 404(b).　We ordinarily review the
admission or rejection of evidence for abuse of discretion.　*State v. Davolt*,
207 Ariz. 191, 208, ¶ 60 (2004).　But because Appellant failed to object at
trial, we review for fundamental error only.　*See Henderson*, 210 Ariz. at 567,
¶ 19.

**¶13**　　　In SVP proceedings, the State must prove beyond a
reasonable doubt that the person is an SVP.　*See* A.R.S. § 36-3707(A); *id.* §
36-3701(7) (defining SVP as one who "[h]as ever been convicted of . . . a
sexually violent offense" and "[h]as a mental disorder that makes the person
likely to engage in acts of sexual violence").　The State must establish "(1)
the person has a mental disorder . . . that predisposes the person to commit
sexual acts to such a degree that he or she is dangerous to others and (2) the

*mental disorder makes it highly probable* that the person will engage in acts of sexual violence." *In re Leon G.*, 204 Ariz. 15, 23, ¶ 28 (2002).

¶14　　　　Dr. Morenz testified about a number of incidents in which Appellant was involved, starting from when Appellant was 12 or 13 years old and continuing until the time of trial.[1]　Dr. Morenz testified about Appellant's prior acts to demonstrate that Appellant would likely engage in acts of sexual violence in the future.　Dr. Morenz learned of the prior incidents through various sources, including police and presentence reports, and prison, mental health, and sex offender treatment records.

¶15　　　　"[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," Ariz. R. Evid. 404(b), but under Rule 405(b), specific instances of conduct are admissible "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense."　Here, contrary to Appellant's assertion, the superior court acted within its discretion in admitting evidence of Appellant's prior acts.

> A character trait is an essential element of a charge, claim, or defense if it is an operative fact which, under substantive law, determines the rights and liabilities of the parties.　The propensity to commit acts of sexual violence is an operative fact that determines the rights and liabilities of an allegedly [SVP] and is therefore an essential element of the state's SVP case.　Rule 405(b) thus permits the use of specific instances of conduct to prove such a propensity.

---

[1]　　　　Such acts included touching little girls' buttocks in school; a burglary charge; a criminal mischief charge; a 1998 shoplifting incident; stealing from his parents; indecent exposure offenses from 1999; other indecent exposures for which Appellant was neither arrested nor charged; pinching young girls (on their buttocks or somewhere else) at a playground; touching prepubescent females and exposing himself to them; convictions for attempted molestation and child abuse, stemming from some of the previously mentioned prior bad acts; failure to register as a sex offender on multiple occasions; unsuccessful completion of probation; drug paraphernalia and weapon possession; assaulting his stepfather; and substance abuse problems that were active every time he had been out of custody.

*In re Commitment of Jaramillo*, 217 Ariz. 460, 463, ¶ 11 (App. 2008) (citation and internal quotations omitted).[2] In the SVP setting, prior bad acts are not used to show that a party acted in conformity with the bad character on a particular occasion, but rather to demonstrate "the person will likely engage in acts of sexual violence in the future and therefore presents a danger to the community." *Id.* at ¶ 10.

**¶16** Appellant also asserts that by allowing the prior bad acts that were unrelated to the determination of whether he was an SVP the court switched to him the burden of proving "he was not as bad as Dr. Morenz was making him out to be." But Appellant does not identify which specific acts were "unrelated" to the SVP determination. Moreover, consistent with the Rule 404 analysis in *Jaramillo*, Dr. Morenz explained that past behavior and psyschosexual history are relevant factors for diagnosing mental disorders and evaluating the likelihood a person will re-offend. The superior court properly instructed the jury as to the State's burden of proof, and Appellant does not explain how the burden was shifted to him. Appellant has not shown, even assuming any error occurred in the admission of prior bad acts, that the error was fundamental, prejudicial error.

## C. Hearsay

**¶17** Appellant also argues that much of Dr. Morenz's testimony violated the Arizona Rules of Evidence because much of the information he relayed to the jury was inadmissible hearsay (or double hearsay) in that it was used to prove the truth of the matters asserted. Again, because Appellant failed to object, we review only for fundamental error. *See Henderson*, 210 Ariz. at 567, ¶ 19.

**¶18** Arizona Rule of Evidence 703 provides that experts may rely on otherwise inadmissible evidence in formulating their opinions "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." The rule permits the proponent of the opinion to disclose the otherwise inadmissible facts or

---

2       The *Jaramillo* court explained that the Rule 404(c) exception does not apply in SVP cases because the proceedings "are not predicated on a party's alleged commission of a sexual offense." *Jaramillo*, 217 Ariz. at 463, ¶ 9 (internal quotations omitted). "Instead, they are predicated on the person's [sic] having a prior conviction for a sexually violent offense, not an 'alleged commission,' and a mental disorder that makes the person likely to commit future acts of sexual violence." *Id.*

data "to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Ariz. R. Evid. 703. Once such facts or data are disclosed, however, they are not admissible as substantive evidence; its only purpose is to "show[] the basis of the expert's opinion." *State v. Lundstrom*, 161 Ariz. 141, 146 (1989).

**¶19**     Without question, much of the material Dr. Morenz relied upon consisted of hearsay and double hearsay, but under Rule 703 he could properly rely on the out-of-court statements. Dr. Morenz presented information he reviewed to the jury and, in doing so, testified about why he considered that information in formulating his opinions regarding Appellant. He explained that without appropriate historical information, sex offenders will frequently "minimize, deny, [and] excuse their behaviors in a variety of different ways" that could produce a distorted perspective if he listened only to them. Thus, the probative value of the information substantially outweighed its prejudicial effect. And, to the extent Appellant suggests the jury was misled, the superior court properly instructed the jury as to how the information relied upon by experts should be treated:

> Expert witnesses have expressed opinions that were based upon information reported by others, including information to which no other witness has testified to, or which is addressed in an exhibit.

> This information is discussed only to explain the basis for the expert's opinion. This information should be considered only in deciding whether to accept or reject an expert's opinion, in whole or in part. It should not be considered to be substantive evidence.

Appellant has not shown the court committed fundamental, prejudicial error by allowing Dr. Morenz to rely on information that included hearsay statements.

## CONCLUSION

**¶20** Based on the foregoing, we affirm the superior court's commitment order resulting from the jury's finding that Appellant is an SVP.



AMY M. WOOD • Clerk of the Court
FILED: AA