IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| IN RE COMMITMENT OF PAUL E. FRANKOVITCH | ) ) ) ) ) ) ) | 2 CA-MH 2004-0005-SP DEPARTMENT B  O P I N I O N |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. A-36949

Honorable Patricia G. Escher, Judge

AFFIRMED

Barbara LaWall, Pima County Attorney
  By Amy Pignatella Cain

Tucson
Attorneys for Appellee

Jill Thorpe

Tucson
Attorney for Appellant

E S P I N O S A, Judge.

¶1        Appellant Paul Frankovitch appeals from the trial court's denial of his two petitions for release and to change his status as a sexually violent person (SVP). He challenges the court's findings that the state had proved beyond a reasonable doubt that his mental disorders have not changed, that he continues to have serious difficulty controlling

his behavior, that he remains a danger to others, and that it is highly probable he will engage in acts of sexual violence if he is discharged. We affirm.

¶2       After a jury trial in 1999, Frankovitch was found to be an SVP as defined in A.R.S. § 36-3701(7). He was committed to the custody of the Department of Health Services to be placed in a licensed facility under the supervision of the superintendent of the Arizona State Hospital. A.R.S. § 36-3707(B)(1). This court affirmed the jury's verdict and the commitment order on appeal. *In re Commitment of Frankovitch*, No. MH 99-0018-SP (memorandum decision filed Nov. 9, 2000). The Arizona Community Protection and Treatment Center of the Arizona State Hospital filed an annual report in 2000, 2001, and 2002, as required by A.R.S. § 36-3708. Because of numerous motions and constitutional challenges Frankovitch filed in the trial court and special action proceedings he filed in this court between 2000 and 2002, the trial court conducted a single hearing on his petitions challenging the conclusions of those annual reports that he should not be released, resulting in the ruling from which he now appeals.

**Right to Jury Trial**

¶3       Frankovitch first argues the trial court erred in ruling that he was not entitled to a jury trial on his petitions. We review de novo issues involving the application of statutes. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 105 P.3d 1163 (2005). When the state filed the petition to have Frankovitch declared an SVP in May 1998, the applicable statutes were found in Title 13, the criminal code. 1997 Ariz. Sess. Laws, ch.

2

136, §§ 30 through 39; 1996 Ariz. Sess. Laws, ch. 315, § 15. The original statute governing procedures on petitions for release permitted either party to request a jury trial. Former A.R.S. § 13-4509(A) and (E), 1995 Ariz. Sess. Laws, ch. 257, § 7; renumbered as former A.R.S. § 13-4609 pursuant to authority of A.R.S. § 41-1304.02. In 1998, the statutes were amended and transferred to Title 36, the public health and safety statutes, 1998 Ariz. Sess. Laws, ch. 136, §§ 6 and 7 through 19, and three statutes were added. 1998 Ariz. Sess. Laws, ch. 136, §§ 20, 21.

¶4 The present statute governing petitions for change of status, the one in effect when Frankovitch's hearing was held, is A.R.S. § 36-3709. It no longer permits a jury trial on such petitions. Frankovitch argues he was nevertheless entitled to a jury trial, claiming the current statute could not be retroactively applied to deprive him of that right. We disagree. Frankovitch is correct that no statute is retroactive unless it expressly so provides. *See* A.R.S. § 1-244. He is also correct that the Arizona Constitution states: "The right of trial by jury shall remain inviolate." Ariz. Const. art. II, § 23; *see also U. S. Fid. & Guar. Co. v. State*, 65 Ariz. 212, 216, 177 P.2d 823, 826 (1947) ("That the right to a trial by jury is a most substantial right is beyond question."). But we find no merit to Frankovitch's assertion that he has a vested right to a jury trial on a petition for change of status.

¶5 A right is vested "'when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest.'" *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986), *quoting Steinfeld v.*

3

*Nielsen*, 15 Ariz. 424, 465, 139 P. 879, 896 (1913); *see also San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 972 P.2d 179 (1999). Contingent rights, on the other hand, are those that only "'come into existence on an event or condition which may not happen or be performed until such other event may prevent their vesting.'" *Hall*, 149 Ariz. at 140, 717 P.2d at 444, *quoting Steinfeld*, 15 Ariz. at 465, 139 P. at 896.

¶6        The trial court concluded that, before Frankovitch was found to be an SVP, he had had, at best, a contingent right to a jury trial on a petition for change of status. Frankovitch quotes the following language: "A vested right 'is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust.'" *San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189, *quoting Hall*, 149 Ariz. at 140, 717 P.2d at 444. Without analysis, he simply asserts that his right to a jury trial on a petition for change of status vested in May 1998 when the state filed the petition alleging he was an SVP. Our analysis, however, leads us to a different conclusion.

¶7        In *Hall*, the supreme court faced the question of whether the legislature's adoption of comparative negligence could "constitutionally be applied to cases arising prior to the [statute's] effective date but filed subsequent thereto." 149 Ariz. at 137, 717 P.2d at 441. In concluding that it could, the court found the defendant had acquired a vested right to assert the affirmative defense of contributory negligence when the plaintiff had filed his complaint. The filing of the complaint was the operative date in that case because the

4

purpose of the action was to adjudicate the defendant's liability for its conduct in causing the plaintiff's injuries on an earlier date.

¶8        In the example on which Frankovitch relies, a criminal defendant's rights are governed by the date the charged offense was committed. *See* A.R.S. § 1-246. A proceeding on a petition to have a person declared to be an SVP, however, is not a criminal action but a civil action. *See Martin v. Reinstein*, 195 Ariz. 293, 987 P.2d 779 (App. 1999). A criminal proceeding determines whether a crime was committed in the past and whether the accused committed it. Unlike the situation in *Hall*, a petition to declare a person sexually violent seeks a declaration of the person's *current* status. *See* A.R.S. § 36-3701(7). The operative date is thus the date of such declaration, and any rights related to hearings on petitions for release vest only at that time. Accordingly, because Frankovitch was not declared to be an SVP until October 1, 1999, after § 36-3709 was amended, he had no vested right to a jury trial on his subsequent petitions for release and for a change of status.

## Expert Witness's Testimony

¶9        We find no merit to Frankovitch's next contention, that the trial court erred in overruling his objection to the state's calling Dr. Morenz to testify. Frankovitch challenges the ruling on three grounds, arguing the testimony violated Rule 26(b)(4)(D), Ariz. R. Civ. P., 16 A.R.S., Pt. 1; was cumulative; and was untimely disclosed. We agree with the state that Morenz was not an independent expert as the term is used in Rule 26(b)(4)(D). The rule provides that "each side shall presumptively be entitled to only one independent expert

on an issue, except upon a showing of good cause." *Id.* Paragraph (B) of Rule 26(b)(4) refers to "an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial." *See also Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 54-55, 938 P.2d 98, 104-05 (App. 1997) (former rule limiting number of expert witnesses applied to "witnesses hired in anticipation of litigation or trial for testimonial purposes"). And the comment to Rule 26(b) notes: "The words 'independent expert' in this rule refer to a person who will offer opinion evidence who is retained for testimonial purposes and who is not a witness to the facts giving rise to the action." Ariz. R. Civ. P. 26(b), 1991 Comm. cmt.

¶10 Morenz testified that he had examined Frankovitch in 1998 pursuant to a contract with the Department of Corrections and that the contract was still in force when he testified in 2003. Although Frankovitch acknowledges that Morenz probably was not "retained" by the state, he argues the psychiatrist was an independent expert because he was not employed by the Pima County Attorney's Office. But that office is not a party to this action; it is instead legal counsel for the actual party, the State of Arizona.

¶11 Frankovitch also argues that Morenz's opinions were developed in anticipation of litigation, which made him an independent expert. That argument appears facially persuasive, but it does not withstand closer scrutiny. The Department of Corrections did ask Morenz to evaluate Frankovitch to determine whether the state should file a petition for his commitment as an SVP upon his release from prison. But the doctor's contract called for

6

him to screen inmates who had committed sexual offenses and who were scheduled for imminent release. That he might recommend the state file petitions for some of the persons he screened does not mean he had been "retained for testimonial purposes." Ariz. R. Civ. P. 26(b), 1991 Comm. cmt.

¶12    As noted above, a typical civil action entails an adjudication about past events. Although an SVP proceeding requires evidence about a person's criminal past, it primarily determines the person's current status and whether the person presently suffers from a particular type of mental disorder. *See* § 36-3701(7). The latter determination necessarily requires that the person undergo a psychological examination. Therefore, the professional who conducts such an examination is more akin to a "witness to the facts giving rise to the action" than to an expert "retained for testimonial purposes." Ariz. R. Civ. P. 26(b), 1991 Comm. cmt.

¶13    Nor do we agree with Frankovitch that Morenz's testimony was cumulative to Dr. Becker's testimony. The evidence showed that Frankovitch had refused to be reevaluated before each annual report was prepared. As a result, the state called Morenz to establish that he had diagnosed Frankovitch in 1998 as having a mental disorder of the type defined in the statute and that Frankovitch had met the statutory definition of an SVP even under the standards imposed by cases decided after he was committed.

¶14    Becker, the director of the Arizona Community Protection and Treatment Center, testified that she had reviewed the annual reports, discussed them with their authors,

7

and concluded that Frankovitch's criminal history and other records supported his diagnoses and that nothing in the records during his commitment showed any change from those diagnoses. She also testified that Frankovitch had refused all treatment since his commitment and that it was highly probable he would commit new sexually violent offenses if he were released. Because the experts testified about different issues, and because Morenz did not simply reiterate his 1998 opinions but discussed his evaluation of Frankovitch in relation to newly imposed standards, the trial court did not err in concluding their testimony was not cumulative.

¶15 Finally, we find no abuse of discretion in the trial court's rejection of Frankovitch's claim that the state had untimely disclosed Morenz's opinions. *See Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 79 P.3d 673 (App. 2003) (ruling on alleged disclosure violations reviewed for abuse of discretion). Frankovitch apparently contends Morenz stated that his 1998 diagnosis continued to apply as well when he testified in December 2003, even though the doctor had only evaluated Frankovitch in 1998. But the question the state actually asked Morenz, and to which Frankovitch objected, was whether the doctor would have recommended that the state petition to have Frankovitch committed as a sexually violent offender in 1998 under the 2003 case law interpretation of the statutory requirements. Morenz's affirmative answer to that question did not constitute an opinion that the diagnosis he had given Frankovitch in 1998 still applied in 2003. Therefore, the trial

8

court did not abuse its discretion in overruling Frankovitch's objection that the doctor's new opinion had not been timely disclosed.

## Admission of Criminal History

¶16      Frankovitch next contends the trial court's admission over his objection of his criminal history, including arrests as well as convictions, violated his right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). We reject that contention for two reasons. First, *Crawford* applies to criminal cases. As noted previously, a proceeding to declare a person sexually violent is a civil action. *Martin*. Therefore, a case decided under the Sixth Amendment does not apply to Frankovitch. More importantly, however, Frankovitch never claimed below that his confrontation rights were being violated. Accordingly, he waived the argument, and we do not address it further. *See Webber v. Grindle Audio Prods., Inc.*, 204 Ariz. 84, 60 P.3d 224 (App. 2002) (appellate courts do not decide issues not raised in trial court).

## Inability to Contest Original Diagnosis

¶17      Next, Frankovitch argues the trial court erred in ruling that he could not challenge at the review hearing the diagnoses of the experts who had testified at the 1999 trial at which he was found to be an SVP. We find no error. The trial court ruled:

> The accuracy and legitimacy of [Frankovitch's] diagnosis, and whether the diagnosed disorder would support a finding that [Frankovitch] is a sexually violent person, were matters to be litigated in the original proceedings. Having failed to raise these issues at trial or on appeal, [Frankovitch] is precluded from raising them in this proceeding.

9

¶18    The state asserts Frankovitch never raised the issue until his post-hearing memorandum. Frankovitch has attached to his reply brief pages from Morenz's cross-examination at the 1999 trial. Frankovitch is correct that the pages show his attorney asked whether there was a controversy among experts on whether a rapist can have a paraphilia. In that sense, the trial court erred. But, contrary to his assertion, Frankovitch did not challenge the diagnosis on appeal. The pages he has attached from his opening brief on his appeal from the 1999 trial show he did challenge the sufficiency of the evidence supporting the verdict. But nothing in those pages claimed that his diagnosis, paraphilia not otherwise specified (NOS), is an inappropriate diagnosis for a rapist. Accordingly, because Frankovitch did not challenge the experts' diagnoses in his appeal from the jury's verdict that he was an SVP, he waived the issue, and the trial court did not err in ruling that he could not raise it in an annual review hearing. *See Hall v. Lalli*, 194 Ariz. 54, 977 P.2d 776 (1999) (res judicata bars litigant from raising claim in new action between same parties that could have been determined in prior action on which judgment was rendered on merits).

## Sufficiency of the Evidence

¶19    Lastly, Frankovitch challenges the sufficiency of the evidence supporting the trial court's findings in denying his petitions. He first argues at length that the diagnosis of paraphilia NOS is an inappropriate diagnosis, asserting that raping nonconsenting adult women is not recognized as a paraphilia in the *Diagnostic and Statistical Manual of Mental Disorders IV*. As a result, he contends he does not have a diagnosis that meets the statutory

requirements for his continued commitment. But the trial court heard conflicting evidence on that issue and resolved the conflicts by finding "credible the testimony of Drs. Morenz and Becker that [p]araphilia NOS, nonconsenting adult, is recognized as a valid diagnosis by those professionals working in the area of sexual disorders, even if it is not accepted by all psychologists and psychiatrists." Because the state presented evidence that supports that ruling, we defer to the trial court's resolution of the conflicts in the evidence, acknowledging that it was in the best position to determine the credibility of the witnesses. *See In re U.S. Currency of $26,980.00*, 199 Ariz. 291, 18 P.3d 85 (App. 2000).

¶20         Second, Frankovitch argues the evidence was insufficient to support the court's conclusion that the state had proved beyond a reasonable doubt he was "likely to engage in acts of sexual violence if discharged." A.R.S. § 36-3714(C). He acknowledges Becker testified it was highly probable he would commit future sexually violent acts if he were released. But he nevertheless contends the court's conclusion was wrong, citing a study that showed rapists over the age of fifty have low recidivism rates and Dr. Maskel's testimony that Frankovitch was a typical offender in that category and, thus, had less than a ten percent chance of committing sexually violent offenses if released. Again, however, Frankovitch cites a conflict in the evidence that the trial court resolved against him. That the court agreed with the state's experts and not his own does not mean the court's conclusion is unsupported by the evidence.

11

**¶21** In light of the evidence that Frankovitch had refused to undergo any treatment since being committed in 1999 and that he had refused to be evaluated for the three annual reports at issue, the evidence reasonably supports the trial court's conclusions that Frankovitch continued to meet the statutory definition of an SVP and should not be released. Accordingly, we affirm the court's order.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
M. JAN FLÓREZ, Presiding Judge