233 P.3d 1158

**In re THOMAS R.**

**No. 1 CA–MH 09–0042 SP.**

Court of Appeals of Arizona, Division 1, Department C.

June 17, 2010.

Bruce Peterson, Legal Advocate, Office of the Legal Advocate By Mary Beth Mitchell, Deputy Legal Advocate, Phoenix, Attorney for Appellant.

Richard M. Romley, Maricopa County Attorney By Jeff W. Trudgian, Appeals Bureau Chief, Karen B. Sciarrotta, Deputy County Attorney, Phoenix, Attorneys for Petitioner–Appellee.

## OPINION

KESSLER, Judge.

¶ 1 A jury found Appellant Thomas R. ("Thomas R.") to be a sexually violent person ("SVP") and he was committed to the Arizona Community Protection and Treatment Center ("Center") pursuant to Arizona Revised Statutes ("A.R.S.") section 36–3707(B)(1) (2009).[1] On appeal, Thomas R. asserts that res judicata or collateral estoppel barred the State from bringing a second SVP case against him in the absence of a new conviction for a sexually violent offense because a 2003 jury had already found he was not an SVP. Further, Thomas R. contends the State failed to prove a material change in circumstances since the prior 2003 jury verdict. Thomas R. also argues the superior court erred in admitting testimony from the State's expert witnesses regarding evidence of deoxyribonucleic acid ("DNA") test results. We hold: (1) the State is permitted to bring the second petition based on changed circumstances to determine whether Thomas R. is currently an SVP; and (2) the superior court did not commit reversible error in admitting expert witness testimony under the

---

**1.** We cite to the most current version of the statute when it has not been substantively revised since the date of the offense.

Confrontation Clause or Arizona Rule of Evidence ("Ariz. R. Evid.") 703 ("Rule 703").

## FACTUAL AND PROCEDURAL HISTORY [2]

■ ¶2 Thomas R. reportedly assaulted a female German citizen in 1977 while he was stationed in Germany during his service in the United States Army. Military personnel reported that he threatened the victim, pushed her to the ground, held a knife to her neck, and stole her purse. A military judge sentenced him to two years imprisonment.

¶3 In July 1979, Thomas R. admitted to police that he raped a sixty-seven year old tourist ("Mary") in the parking lot of the Camelback Inn. Although Thomas R. admitted to this sexual assault, a plea agreement dismissed the offense involving Mary after he agreed to plead guilty to another sexual assault committed that same month.

¶4 In the other sexual assault committed that same month, Thomas R. attacked and raped a sixteen-year-old girl ("Marie") in the parking lot of the Camelback Inn. According to Marie's report, Thomas R. beat and raped her vaginally and anally. Marie also indicated he tied her hands behind her back with her bra and slip. Thomas R. pled guilty to sexual assault, a class 2 nondangerous felony, and was sentenced to fourteen years in prison.

¶5 In 1989, the police saw Thomas R. break into and take two bags of clothing from a woman's vehicle. The police followed him to his home, stopped him, and searched his vehicle finding the two bags of clothing and a kit containing a stocking mask with the eyes cut out, a stun gun, tape, clean cotton gloves, and razor blade utility knife. Thomas R. indicated he possessed the mask "as a kind of fantasy[,]" he had the stun gun because he lived in a bad neighborhood, he used the clean cotton gloves to work on his

car, and he was unaware of the tape. Thomas R. pled guilty to burglary in the third degree, a class 2 nondangerous felony with one prior felony conviction, and was sentenced to six years in prison.

¶6 In 1995, Thomas R. was linked to an incident involving a prostitute ("Paulette") who was sexually assaulted after she agreed to "straight sex." Paulette reported that after she got into Thomas R.'s vehicle, he produced a knife and taped her hands behind her back. He reportedly drove to an Indian reservation where he forced her to have vaginal, anal, and oral sex with him. The charges against Thomas R. involving Paulette were dismissed as part of a plea agreement.

¶7 Also in 1995, Thomas R. produced a knife and threatened to rape a second prostitute ("Michelle") after she agreed to ride in his car. After struggling with him, Michelle jumped out of his car and suffered injuries from both the fall and a four-inch gash across her neck from his knife. Thomas R. pled guilty to attempted sexual assault, a class 3 nondangerous felony, and aggravated assault, a class 3 felony. He received nine years in prison for the aggravated assault and lifetime probation for the attempted sexual assault.

■ ¶8 In June 2003, upon his release from prison following his conviction for assaulting and raping Michelle, the State filed a petition ("2003 petition") alleging Thomas R. was an SVP. In its petition, the State alleged the predicate offense was the conviction for the sexual assault of Marie. The petition also included Thomas R.'s conviction in 1996 for the incident involving Michelle. A jury found Thomas R. was not an SVP and the court continued him on probation.[3]

¶9 In 2004, Thomas R. was charged with the sexual assault of a prostitute ("Brandy") who reported to police that a man picked her up in his truck, tied her hands with plastic

---

**2.** We review the evidence in the light most favorable to supporting the superior court's decision. *In re MH 2008-001188*, 221 Ariz. 177, 179, ¶14, 211 P.3d 1161, 1164 (App.2009).

**3.** On appeal, Thomas R. refers to the 2003 petition and proceedings, but he concedes that the petition, transcripts, and minute entries stem-

ming from that petition were not included in the record. Further, neither party sought to include these items in the record. When "matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court." *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

zip ties, and forced her to perform oral sex on him. Brandy also indicated the man used a knife to cut the straps of her shirt and bra, and that he pushed her out of the truck. The indictment against Thomas R. was dismissed because Brandy had moved out of state, was afraid to return to Arizona to testify, and a subpoena could not be served compelling her to testify.

¶ 10 Thomas R. admitted to violating probation in 2005. He was reinstated on intensive probation and was ordered to serve six months in county jail. In 2006, Thomas R. admitted to another probation violation and was reinstated on intensive probation while being ordered to serve three months in county jail. In 2008, Thomas R.'s probation was revoked and he was sentenced to a presumptive term of three and one-half years in prison after he admitted to violating the conditions of probation.[4]

¶ 11 Prior to his release, the State filed a new petition ("2008 petition") alleging Thomas R. was an SVP. The court found probable cause existed to believe that Thomas R. was an SVP and ordered he be transferred to the Center. The court also set the matter for a jury trial.

¶ 12 Prior to trial, Thomas R. filed a motion in limine to preclude evidence of the sexual assault he was linked to involving Brandy. He argued that while he agreed competent evidence of a sexual crime committed by him was relevant in an SVP case, such evidence should not be introduced absent testimony by the "victim" or by properly noticed witnesses competent to introduce DNA evidence. The superior court held oral argument on Thomas R.'s motion. Thomas R. objected to the DNA evidence on the grounds that it lacked sufficient foundation and that the State failed to timely disclose it. The State asserted Thomas R. never requested that separate DNA be provided for testing or expressed an interest in interviewing the scientists involved in the DNA testing. Further, the State clarified that the DNA evidence would be introduced to determine whether he was an SVP, not whether he should have been convicted of the crime in-

volving Brandy. The court denied the motion in limine.

¶ 13 A jury trial began on February 24, 2009. During the trial, the State presented testimony of its psychologist, Dr. Harry Hoberman, regarding Thomas R.'s condition. Dr. Hoberman indicated that he reviewed Thomas R.'s family and work history, marriage, drug and alcohol use, and police reports involving his arrests and convictions. Further, Dr. Hoberman testified that he reviewed police reports containing a report of positive DNA matching Thomas R. and the material found on the plastic zip ties used to bind Brandy. During Dr. Hoberman's testimony regarding the DNA, defense counsel objected a number of times on the following grounds: (1) relevance; (2) insufficient foundation; and (3) hearsay. The court overruled defense counsel's objections. Later, defense counsel cross-examined Dr. Hoberman about the sexual assault involving Brandy and the DNA report described in the Tempe Police Department records.

¶ 14 A jury found Thomas R. to be an SVP. The superior court entered a signed judgment committing him to the Center to receive care, treatment, and supervision until further ordered. Thomas R. timely filed this appeal and we have jurisdiction pursuant to A.R.S. § 12–2101(A) and (B) (2003).

### DISCUSSION

¶ 15 On appeal, Thomas R. raises two issues. First, he argues res judicata or collateral estoppel barred the State from bringing the 2008 SVP proceeding because he was previously found not to be an SVP in 2003. In connection with that argument, he contends the State failed to prove a material change in his condition since the 2003 verdict. Second, he asserts the superior court erred in permitting Dr. Hoberman to testify that there was a match between Thomas R.'s DNA and that found on zip ties used to bind Brandy's hands in the 2004 sexual assault.

### I. Effect of Prior 2003 Jury Finding that Thomas R. was not an SVP

¶ 16 Thomas R. asserts the State was barred from bringing the 2008 SVP action

---

**4.** Thomas R. was awarded 847 days of presentence incarceration credit.

because a jury already found he was not an SVP in 2003. Moreover, he contends the State failed to prove a material change in circumstances in its 2008 petition since the prior jury verdict. We review constitutional questions and questions of statutory construction de novo. *In re Commitment of Jaramillo,* 217 Ariz. 460, 462, ¶ 5, 176 P.3d 28, 30 (App.2008). Whether res judicata or collateral estoppel applies is a question of law that we review de novo. *Corbett v. Manor-Care of Am., Inc.,* 213 Ariz. 618, 623, ¶ 10, 146 P.3d 1027, 1032 (App.2006).

## A.   Overview of SVP Proceedings

¶ 17 Under Arizona's SVP statutes, a person may be committed if the State proves beyond a reasonable doubt that the person is an SVP. *See* A.R.S. § 36–3707(A) (2009); *Jaramillo,* 217 Ariz. at 462, ¶ 6, 176 P.3d at 30 (citation omitted). Under A.R.S. § 36–3701(7)(a), an SVP is one who "[h]as ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial." Additionally, an SVP must "[have] a mental disorder that makes the person likely to engage in acts of sexual violence." A.R.S. § 36–3701(7)(b); *see also Leon G.,* 204 Ariz. 15, 19, ¶ 10, 59 P.3d 779, 783 (2002). To allege a person is an SVP, an agency with jurisdiction over the person must notify the attorney general or county attorney in writing of the person's expected release from custody between thirty and one hundred and eighty days before release. A.R.S. § 36–3702(A) (2009). Thereafter, the attorney general or county attorney may file a petition in the superior court alleging that the person is an SVP. A.R.S. § 36–3704(A)(1) (2009).

¶ 18 Upon receipt of the petition, the superior court determines whether probable cause exists to believe that the person is an SVP. A.R.S. § 36–3705(A) (2009). The person named in the petition may request a hearing to decide the issue of probable cause during which the person has a right to present evidence, cross-examine witnesses, and

review and copy the court's file. A.R.S. § 36–3705(E)(1–3). If the court reaffirms that probable cause exists to believe that the person is an SVP, the judge must order an evaluation as to whether the person is an SVP. A.R.S. § 36–3705(G). Within 120 days after the petition's filing, the court conducts a trial to determine whether the named person is an SVP. A.R.S. § 36–3706 (2009). The State bears the burden of proving beyond a reasonable doubt whether the person meets the statutory definition of an SVP. A.R.S. § 36–3707(A). If the trier of fact determines beyond a reasonable doubt that the person is an SVP, the court must either commit the SVP to custody or, when appropriate, order that the SVP be released to a less restrictive alternative. A.R.S. § 36–3707(B)(1) and (2).

¶ 19 After SVP determination, if the person's mental disorder may have changed, either the State or the SVP may petition court for discharge or conditional release to a less restrictive treatment and supervision. A.R.S. § 36–3709(A) (2009). Filing either petition results in a hearing at which the SVP may be present and participate. At that hearing, the State bears the burden of proving that conditional release or discharge would be inappropriate because the person remains a danger to others and is likely to engage in acts of sexual violence if released to a less restrictive alternative. A.R.S. § 36–3709(C).

## B.   Res Judicata and Collateral Estoppel

██ ¶ 20 Thomas R. argues the State was precluded from charging him as an SVP in 2008 because a jury rendered a verdict in 2003 that he was not an SVP. This is an issue of first impression in Arizona. We disagree with Thomas R. While the issue in both petitions is whether he is an SVP, the State was permitted to bring the second petition based on "changed circumstances" to determine whether Thomas R. is currently an SVP. *Turner v. Super. Court,* 105 Cal. App.4th 1046, 1058–60, 130 Cal.Rptr.2d 300, 312–14 (Cal.Dist.Ct.App.2003).[5]

5.   The California SVP statutes considered in *Turner* are, for purposes of this opinion, almost identical to Arizona's SVP statutes. Specifically, an SVP is defined as a person "who has been

convicted of a sexually violent offense ... and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will

¶ 21 " 'Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' " *Corbett,* 213 Ariz. at 624, 146 P.3d at 1033 (*quoting Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). The related doctrine of collateral estoppel prevents parties from relitigating an issue that was essential to a final determination in a previous proceeding. *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 514, ¶ 9, 990 P.2d 1069, 1073 (App.1999).

¶ 22 While "res judicata and collateral estoppel principles may apply in civil commitment proceedings," *Turner,* 105 Cal. App.4th at 1057, 130 Cal.Rptr.2d 300 (citing *People v. Francis,* 98 Cal.App.4th 873, 877, 120 Cal.Rptr.2d 90 (Ct.App.2002)), successive petitions are not completely barred by those principles. *Id.* at 1058, 130 Cal.Rptr.2d 300. Rather, a petition to declare a person an SVP "seeks a declaration of the person's *current* status." *In re Commitment of Frankovitch,* 211 Ariz. 370, 373, ¶ 8, 121 P.3d 1240, 1243 (App.2005); *see also* A.R.S. § 36–3701(7)(b) (an SVP is one who "*[h]as* a mental disorder that makes the person likely to engage in acts of sexual violence.") (emphasis added). When successive petitions are filed, they are not barred by res judicata or collateral estoppel even if prior evidence is introduced provided the State alleges changed circumstances since the last unsuccessful petition.

¶ 23 Consequently, the issue at Thomas R.'s prior trial was whether, in 2003, he was likely to commit sexually violent acts upon his release. That issue was different than the issue presented in the 2008 petition, which was whether Thomas R. would be likely to commit sexual violent acts if released in 2008. Because A.R.S. § 36–3701(7)(b) requires a determination of whether a person currently *has* a mental disorder, the issue of Thomas R.'s mental health and likelihood to

engage in acts of sexual violence at the filing of the 2008 petition is not identical to the issue presented in the 2003 proceeding. *Turner,* 105 Cal.App.4th at 1058, 130 Cal. Rptr.2d 300.

¶ 24 Our conclusion that res judicata and collateral estoppel do not bar successive petitions if based on changed circumstances is supported by the policy underlying the SVP statutes. If res judicata and collateral estoppel principles did not apply, the State would be permitted to file successive petitions against an individual on the same facts in a proceeding, which would result in the individual's complete loss of liberty.[6] *Id.* at 1057, 130 Cal.Rptr.2d 300. However, the individual's liberty interest must be balanced against the government's significant interest to protect the public from mentally ill persons who are likely to prey upon them. *Id.* at 1057, 130 Cal.Rptr.2d 300. Thus, the individual's liberty "interest is not diminished because of the existence of earlier proceedings that pertained to the individual's mental state and dangerousness at a different time." *Id.*

¶ 25 Further, A.R.S. § 36–3709(A) recognizes that an adjudication of a person's mental disorder can change because the section allows for less restrictive alternatives if it is determined that a person is not likely to engage in acts of sexual violence. *See also Leon G.,* 204 Ariz. at 20, ¶ 14, 59 P.3d at 784. Thus, the adjudication of Thomas R.'s mental status in 2003 is not conclusive as to his status in 2008 and the State may bring successive petitions if it alleges changed circumstances.

## C. Sufficiency of Evidence of Changed Circumstances

¶ 26 Thomas R. contends that because he was not convicted of a new sexually violent offense after 2003, the State was barred

engage in sexually violent criminal behavior." Cal. Welf. & Inst.Code § 6600(a)(1) (2010). A diagnosed mental disorder is defined as a condition "affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." *Id.,* § 6600(c). A person against whom an SVP petition is filed has the right to a jury trial and can be committed as an SVP only if a

unanimous jury or the finder of fact finds the State proved he is an SVP beyond a reasonable doubt. *Id.,* §§ 6603(a), 6604.

**6.** We need not address the situation where the State is barred from filing successive petitions where only a new psychologist examines an individual with unchanged circumstances.

by res judicata or collateral estoppel principles from filing the 2008 petition. We disagree. In such a case, the State may file a subsequent SVP petition if the State has evidence of a "change of circumstances" from the earlier proceedings to establish the individual is now an SVP. *Turner*, 105 Cal. App.4th at 1060–61, 130 Cal.Rptr.2d 300. "Changed circumstances" show "that despite the fact the individual did not possess the requisite dangerousness in the earlier proceeding, the circumstances have materially changed so that [the individual] now possesses that characteristic." [7] *Id.*, 105 Cal.App.4th at 1060, 130 Cal.Rptr.2d 300. Such circumstances are not limited to convictions, but to any acts or wrongs tending to show a person is an SVP. *See Jaramillo*, 217 Ariz. at 463–64, ¶¶ 10–14, 176 P.3d at 31–32 (State may rely on prior acts or wrongdoing to prove SVP status pursuant to Ariz. R. Evid. 404).

¶ 27 The State met its burden to show that even in light of the 2003 jury verdict finding Thomas R. was not an SVP, as of 2008 he was an SVP. Dr. Hoberman testified that he considered Thomas R.'s "entire history," and that the facts are such that Thomas R. is now a dangerous person who is likely to reoffend.[8] Dr. Hoberman testified that he reviewed Thomas R.'s convictions and charges, including his arrest related to the incident involving Brandy. Dr. Hoberman explained that being arrested for many sexual offenses puts a person at a much higher risk of committing new offenses than someone who has never been arrested or only has one conviction.

¶ 28 In addition to considering Thomas R.'s arrests and convictions, Dr. Hoberman noted that during his 2008 examination, Thomas R. came across very defensive and tried to put forward a positive social impression even though he lacked insight into his condition. For example, when asked to describe his risk for committing future sex offenses Thomas R. responded, "[A]nything from two minutes from now is a guess. How can you know someone is going to do something again[?]"[9] Additionally, Dr. Hoberman testified that when administered a personality test, Thomas R.'s results showed he possessed an antisocial and narcissistic personality disorder that is commonly associated with being impulsive, pleasure centered, and taking risks. Dr. Hoberman stated that such

7. Thomas R. argues that the 2008 petition should have been barred because "there was no conviction for a new sexually violent offense after 2003, nor was there solid evidence he had committed such an offense." The burden of showing "changed circumstances," however, does not limit the State to merely presenting evidence of a new sexually violent conviction. Instead, the *Turner* court, relying on *Cooley v. Super. Court*, 89 Cal.App.4th 785, 107 Cal.Rptr.2d 724 (Cal. Dist.Ct.App.2001), noted that when a court determines "changed circumstances" at the probable cause hearing, it must decide "whether a reasonable person *could entertain a strong suspicion* that the petitioner has satisfied all the elements required for a civil commitment." *Id.* at 1061, 130 Cal.Rptr.2d 300. Specifically, the court noted that in addition to prior convictions for sexually violent offenses, the court may consider whether the offender has a diagnosable mental disorder, the disorder makes it likely that the individual will engage in sexually violent criminal conduct if released, and the sexually violent criminal conduct is predatory in nature. *Id.* at 1061, 130 Cal.Rptr.2d 300. *See also Jaramillo*, 217 Ariz. at 463–64, ¶¶ 10–14, 176 P.3d at 31–32 (Ariz. R. Evid. 404 permits State to introduce prior wrongs and acts to show SVP status).

Although the 2003 jury verdict that Thomas R. was not an SVP has some probative value on whether he was likely to commit sexually violent acts upon his parole revocation release in 2008, the two petitions were filed five years apart so the probative value is relatively weak. *Compare Turner*, 105 Cal.App.4th at 1059, 130 Cal.Rptr.2d 300 (first petition's factual finding that defendant was unlikely to reoffend provided strong probative value when second petition was filed merely eight months later).

8. We reference Dr. Hoberman's testimony as it relates to the State's filing of the 2008 petition. In a later section, we address Dr. Hoberman's testimony regarding a match between Thomas R.'s DNA and that found on the zip ties in Brandy's sexual assault.

9. While Thomas R. also stated at first that he thought the chance of his committing a sexual offense in the future was zero, he later changed that to ten percent, then stated that "[A]nything from two minutes from now is a guess. How can you know someone is going to do something again[?]". Dr. Hoberman testified that given Thomas R.'s background as a sex offender, these statements showed a lack of good understanding of his risk and lack of insight of the things Thomas would need to do to lower the risk of future sexual offenses. We view the evidence in the light most favorable to supporting the superior court's conclusion. *In re MH 2008–001188*, 221 Ariz. at 179, ¶ 14, 211 P.3d at 1164.

elevated results are important because they are associated with a higher risk of sexual reoffending. For instance, Thomas R.'s score indicated that of six or more who scored the same level, 52 percent had a likelihood of being reconvicted of a new sex offense over a 15-year period.

¶ 29 Moreover, Dr. Hoberman noted that Thomas R.'s numerous probation violations, including those after 2003, showed he had a high risk of reoffending because he was non-compliant with conditional release, displayed high risk behavior while residing in the community, and was deceptive to his probation officer and the leader of his sex offender treatment group. Dr. Hoberman also testified that Thomas R. was not successful in sex offender treatment because he essentially had to start sex offender treatment from the beginning each time he returned to jail as a result of probation violations. Thus, Thomas R. never fully completed sex offender treatment. Further, Dr. Hoberman characterized Thomas R. as a pathological liar because he denied "virtually everything."

¶ 30 This evidence is in contrast to the lack of changed circumstances found in *Turner*. In *Turner*, the defendant had been incarcerated for sexual crimes and determined to be an SVP in 1998. At the end of his two year commitment, the State again alleged Turner was an SVP, but in 2001, a jury found that he was not an SVP. *Turner*, 105 Cal.App.4th at 1051, 130 Cal.Rptr.2d 300. Three months after his 2001 release, Turner was incarcerated for a parole violation and three months later the State filed a new SVP petition. At the probable cause hearing on that petition, held eight months after the jury had found Turner not to be an SVP, the State presented expert testimony based on the facts which had been before the jury in the 2001 SVP trial and the fact of the later parole violation. *Id.* at 1052–53, 130 Cal.Rptr.2d 300. On appeal from the trial court's probable cause determination that Turner was now an SVP, the Court of Appeal held that there was insufficient evidence of changed circumstances because the State's case was based exclusively on the reports of two experts who had interviewed Turner in connection with

the 1998 petition, but not in connection with the 2002 petition and had not relied on any facts occurring after the 2001 SVP trial to support their current conclusion. *Id.* at 1061–62, 130 Cal.Rptr.2d 300. Nor had the experts explained how the curfew violation affected their conclusion. *Id.* at 1062, 130 Cal.Rptr.2d 300. Here, the 2003 SVP trial was five years before the current SVP petition, Dr. Hoberman interviewed Thomas R. in connection with this SVP petition, and stated why post–2001 probation violations and the arrest in connection with Brandy affected his determination.

¶ 31 Consequently, the State presented sufficient evidence showing "circumstances have materially changed" since the filing of the 2003 petition and that Thomas R. is now an SVP. *Turner*, 105 Cal.App.4th at 1060–61, 130 Cal.Rptr.2d 300.

## II. Admitting Dr. Hoberman's Testimony Regarding DNA

¶ 32 Thomas R. argues the superior court erred in permitting Dr. Hoberman to testify that there was a match between his DNA and that found on the zip ties used to bind Brandy's hands in the 2004 sexual assault. We review the superior court's decision to admit Dr. Hoberman's testimony for an abuse of discretion, and we will not disturb the court's ruling unless a clear abuse of discretion appears and prejudice results. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982) (citations omitted); *see also State v. Dann*, 220 Ariz. 351, 365, ¶ 66, 207 P.3d 604, 618 (2009) ("We review a trial court's rulings on the admission of evidence for an abuse of discretion."). "That discretion is abused if ... the trial court commits an error of law in reaching its discretionary conclusion." *Ferguson v. Tamis*, 188 Ariz. 425, 427, 937 P.2d 347, 349 (App.1996) (citations omitted).

### A. Right to Confront Witnesses Against Him

¶ 33 Thomas R. contends that his procedural due process right to confront witnesses against him[10] was violated because the

10. Thomas R. acknowledges that SVP commitment proceedings are civil in nature. *Leon G.*,

lab technician who conducted the DNA test in the Brandy incident did not testify and was not disclosed or listed as a witness by the State. The State contends that because Thomas R. did not argue below that his procedural due process right to confront witnesses against him was violated, he waived this argument on appeal. In reply, Thomas R. argues that when he raised his foundational argument to Dr. Hoberman's testimony concerning the DNA tests, he preserved his constitutional argument.

¶ 34 Absent fundamental error, " 'if evidence is objected to on one ground in the trial court and admitted over that objection, other grounds raised for the first time on appeal are waived.' " *State v. Moody*, 208 Ariz. 424, 455, ¶ 120, 94 P.3d 1119, 1150 (2004) (citing *State v. Neal*, 143 Ariz. 93, 100, 692 P.2d 272, 279 (1984)); *State v. Olsen*, 157 Ariz. 603, 610, 760 P.2d 603, 610 (App.1988) (finding failure to object to an offer of evidence waives any complaint on appeal absent fundamental error).[11] Assuming that fundamental error analysis applies in this civil context, we need not decide whether the constitutional argument was waived except for fundamental error because we conclude the superior court did not commit reversible error in admitting Dr. Hoberman's reference to the DNA evidence.

¶ 35 We assume for these purposes that the Confrontation Clause analysis under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is similar to the right to confrontation under procedural due process in civil proceedings. *In re MH–2008–000867*, 222 Ariz. 287, 291, ¶ 17, 213 P.3d 1014, 1018 (App.2009) (citations omitted) (review granted February 4, 2010). Under that analysis, it would be error for a court to admit hearsay evidence of DNA analysis to prove that a defendant committed the charged offense. *Melendez–Diaz v. Massachusetts*, ⸺ U.S. ⸺, 129 S.Ct. 2527, 2542, 174 L.Ed.2d 314 (2009) (finding the Sixth Amendment does not permit the State to prove its case via *ex parte* out-of-court affidavits). Assuming without deciding that same analysis applies to testimony admitted not to prove the accuracy of the DNA test results, but only to support an expert opinion on another issue such as whether Thomas R. was an SVP,[12] on this record admission of Dr. Hoberman's testimony relating to the DNA results was not reversible error. Dr. Hoberman based his expert opinion on all the reports, probation violations and his current examination of Thomas R. The reference to the DNA test results was an insignificant part of Dr. Hoberman's analysis and subject to a limiting jury instruction.

¶ 36 We will not reverse the superior court if we cannot find any prejudice. *State v. Lundstrom*, 161 Ariz. 141, 150, 776 P.2d 1067, 1076 (1989) (citation omitted) (noting error is harmless or non-prejudicial when it can be said beyond a reasonable doubt that the error did not affect the jury verdict); *see also State v. Spreitz*, 190 Ariz. 129, 142, 945 P.2d 1260, 1273 (1997) ("[W]e have no difficulty concluding beyond a reasonable doubt by reason of the overwhelming evidence against the defendant ... that the jury would have found him guilty without the photographs."). Dr. Hoberman's testimony and the documentary evidence relating to Thomas R.'s conduct both before and after

---

204 Ariz. at 18, ¶ 2, 59 P.3d at 782 (citation omitted). However, he argues that his procedural due process right to confront, which is similar to the Confrontation Clause under the Sixth Amendment of the United States Constitution in criminal cases, was violated.

11. Fundamental error analysis applies to arguments involving Confrontation Clause issues. *See State v. Boggs*, 218 Ariz. 325, 333–34, ¶ 31, 185 P.3d 111, 119–20 (2008) (court engaged in fundamental error review after a defendant failed to object to challenges to admissibility based on the Confrontation Clause).

12. The Arizona Supreme Court held, prior to *Melendez–Diaz*, that reliance on out-of-court statements such as laboratory results to show the basis of a testifying expert's opinion does not violate the Confrontation Clause. *State v. Tucker*, 215 Ariz. 298, 313–15, ¶¶ 52, 61–62, 160 P.3d 177, 192–94 (2007). While this appeal was pending, the Arizona Supreme Court granted review in a case raising the issues whether *Tucker's* analysis should apply to testimony about DNA test results after *Melendez–Diaz* and what limiting jury instructions should be given in that context. *State v. Gomez*, CR 09–0339–PR (review granted May 20, 2010). Here, Dr. Hoberman acknowledged that he had no idea of the accuracy of those reports.

the 2003 SVP trial overwhelmingly supports the jury verdict that Thomas R. was an SVP even if the jury had not considered the DNA evidence. Dr. Hoberman discussed in detail the threat he believed Thomas R. posed based on his examination of Thomas R. and Thomas R.'s repeated arrests, convictions and probation violations, *supra* ¶¶ 27–29. Moreover, that analysis also was based on Thomas R.'s statement that he could not tell from moment to moment whether he might commit another sexual offense. When the other evidence overwhelmingly supports the fact at issue, we cannot say that the defendant was prejudiced. *Spreitz, id.*

¶ 37 Moreover, as noted *infra*, ¶ 43, the superior court also instructed the jury that it should not consider Dr. Hoberman's testimony as truth of the DNA test results. We assume the jury followed those instructions, thus precluding the jury from considering the DNA-related testimony as proof that Thomas R. assaulted Brandy. *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn,* 184 Ariz. 120, 140, 907 P.2d 506, 526 (App. 1995).

¶ 38 Accordingly, we find no basis to reverse the judgment that Thomas R. was an SVP based on an alleged violation of his due process rights to examine witnesses against him.

## B. Rule 703

¶ 39 Thomas R. also argues that the superior court erred in admitting Dr. Hoberman's testimony because he merely testified as to the conclusion of a non-testifying witness, which violated Rule 703. We disagree.

¶ 40 Under Rule 703:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference un-

less the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Ariz. R. Evid. 703. The Arizona Supreme Court has held that "[f]acts or data underlying the testifying expert's opinion are admissible for the limited purpose of showing the bases of that opinion, not to prove the truth of the matter asserted." *Lundstrom,* 161 Ariz. at 148, 776 P.2d at 1074 (citation omitted). However, an expert's testimony which "merely acts as a conduit for another non-testifying expert's opinion ... is hearsay and inadmissible...." *Id.*

¶ 41 We find no reversible error under Rule 703. While Dr. Hoberman testified that a fresh sample of Thomas R.'s DNA matched the DNA found on the black plastic bag tie used to secure Brandy's hands, he did not testify to the validity of the DNA test. In fact, Dr. Hoberman stated that: (1) he did not conduct the DNA test; (2) he was not a DNA scientist; and (3) that the information he had about the DNA was only as good as the report he reviewed. Instead, Dr. Hoberman testified that the significance of the DNA results is that it provided information "linking [Thomas R.] to the offense such that he was charged and held for a period of time [and] the description of the offense is very similar to the descriptions" provided by other victims. Further, Dr. Hoberman stated "there appears to be an MO for [Thomas R.] and [the Brandy incident] fits that MO." Consequently, the court did not err in admitting Dr. Hoberman's testimony regarding the DNA because it merely showed the basis of his opinion, and was not offered to prove the truth of the matter asserted or to merely regurgitate another expert's opinion. *Id.,* 161 Ariz. at 148, 776 P.2d at 1074.

¶ 42 Nor did the superior court err in applying the balancing test under Ariz. R. Evid. 403 ("Rule 403") and Rule 703 to "weigh the value of admitting" Dr. Hoberman's testimony "against the dangers of unfair prejudice arising from such disclosure." *Id.,* 161 Ariz. at 148, 776 P.2d at 1074. While the record does not indicate the court conducted such balancing, the record shows that

neither party asked the court to apply the balancing test. *Id.* (the superior court was not required to apply the Rule 403 balancing test when neither party requested that the court do so). Moreover, on this record we see no reason why the court had to explicitly make its balancing determination on the record when the parties already argued both the probative value and unfair prejudice associated with admitting Dr. Hoberman's testimony. *See State v. Beasley*, 205 Ariz. 334, 337, ¶ 15, 70 P.3d 463, 466 (App.2003) (court was not required to make explicit findings that balanced the probative value of the evidence against the unfair prejudice because the record revealed that the parties argued both the probative value and any unfair prejudice that could result in the admission of the statement).

¶ 43 Finally, the court instructed the jury not to consider Dr. Hoberman's testimony as truth of the DNA finding.[13] We assume the jury followed that instruction. *Hyatt Regency*, 184 Ariz. at 140, 907 P.2d at 526. Accordingly, the court did not err under Rule 703 in admitting Dr. Hoberman's testimony.

## CONCLUSION

¶ 44 For the foregoing reasons, we affirm.

CONCURRING: PATRICK IRVINE, Presiding Judge and MICHAEL J. BROWN, Judge.

---

**13.** Regarding hearsay exhibits, the court instructed the jury that, "certain exhibits have been admitted in evidence for the limited purpose of allowing the experts to consider the information contained in such exhibits, including allegations, in support of their evaluations or opinions ... [S]uch information is not to be considered ... as evidence of the truth of any fact."